202 S.E.2d 889 (1974)
BOARD OF SUPERVISORS OF FAIRFAX COUNTY
v.
SNELL CONSTRUCTION CORPORATION and Preston Construction Corporation.
Supreme Court of Virginia.
March 4, 1974.
*891 John F. Rick, Asst. County Atty. for Fairfax County (Frederic Lee Ruck, County Atty. for Fairfax County, on brief), for appellant.
David E. Feldman, Fairfax (Dexter S. Odin; Odin & Feldman, Fairfax, on brief), for appellees.
Before SNEAD, C. J., and I'ANSON, CARRICO, HARRISON, COCHRAN, HARMAN and POFF, JJ.
*890 POFF, Justice.
This appeal presents our first opportunity to consider the standard to be applied in judicial review of the validity of a zoning ordinance, enacted on motion of the zoning authority, which effects a piecemeal reduction of permissible residential density (downzoning).
Under the 1964 Annandale Comprehensive Master Plan, a 26 acre tract of land lying south of State Route 236 between Backlick Road on the east and Ravensworth Road on the west in Annandale, now owned by Snell Construction Corporation and Preston Construction Corporation (landowners), was zoned for low residential density. On May 16, 1969, landowners filed an application for increased density on a 16 acre portion of the tract. At that time, the 1964 plan was being considered for revision. On February 25, 1970, the Board of Supervisors of Fairfax County (the Board) adopted a new Annandale Master Plan. That plan, comprehending the entire Annandale complex, included two zoning districts affecting the 26 acre tract, one permitting high density and the other medium density.
Representing the southern boundary of the high density district, the dividing line between the two districts is shown on maps of the 1970 plan as a "collector" road running approximately parallel to Route 236 across landowners' property and connecting Backlick and Ravensworth. A dispute arose whether the eastern terminus of the dividing line was intended to be at Jayhawk Street 1300 feet south of Route 236 or at Falcon Street 1500 feet south. It was fixed in an undated errata sheet prepared by staff (never formally approved by the Board) at Falcon Street.
On December 28, 1970, at the express urging of the county land use staff, landowners filed an amended application requesting high density zoning in the northern portion of the 26 acre tract and medium density in the southern portion in accordance with the new Master Plan. Their application showed the eastern terminus of the dividing line at Falcon Street. The Planning Commission disapproved the amended application but recommended that the entire 26 acres be zoned to the density requested in the original application. On May 26, 1971 the Board declined the recommendation and adopted an ordinance granting landowners' amended application.
On April 17, 1972 a newly-elected Board of Supervisors, proceeding on its own motion, *892 adopted an ordinance reducing the high density authorized by the old Board in the May 26, 1971 ordinance to medium density and fixing the eastern terminus of the southern boundary of the high density district at Jayhawk Street.
Landowners filed a motion for declaratory judgment praying that the trial court declare the April 17, 1972 ordinance void and the May 26, 1971 ordinance valid. By letter opinion dated November 14, 1972 and final decree entered November 24, 1972 the trial court granted landowners' prayer, ruling that "the defendants can change the zoning, provided there is a substantial change in circumstances or a mistake", finding that "the evidence does not support a finding of substantial change in circumstances or mistake as to merit the downzoning on April 17, 1972", and holding that "the action of Defendants . . . in downzoning the Complainant's property. . . [was] arbitrary, capricious and unreasonable and, therefore, illegal, invalid and void".
We look first to the policy and purposes of the zoning statutes adopted by the General Assembly, Code Title 15.1, Chapter 11. Read as a whole, the statutes strike a deliberate balance between private property rights and public interests.
"This chapter is intended to encourage local governments to improve public health, safety, convenience or welfare and to plan for the future development of communities to the end that transportation systems be carefully planned; that new community centers be developed with adequate highway, utility, health, educational, and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas be provided with healthy surrounding for family life; and that the growth of the community be consonant with the efficient and economical use of public funds." Code § 15.1-427 (Repl.Vol.1973).
The statutes recognize that public power over private property rights should be exercised judiciously and equitably. That policy springs not only from public respect for personal rights and individual integrity but also from enlightened public self-interest. The General Assembly has recognized that it is in the public interest that private land not required for public use be put to its optimum use to fulfill societal needs. One purpose of zoning ordinances is "to encourage economic development activities that provide desirable employment and enlarge the tax base", Code § 15.1-489 (Repl.Vol.1973), and "[z]oning ordinances. . . shall be drawn with reasonable consideration for . . . the conservation of properties and their values. . ." Code § 15.1-490 (Repl.Vol.1973).
Under the private enterprise system, land use is influenced by the profit motive. Profit flows from investments of time, talent, and capital. Landowners venture investments only when the prospects of profit are reasonable. Prospects are reasonable only when permissible land use is reasonably predictable. The Virginia landowner always confronts the possibility that permissible land use may be changed by a comprehensive zoning ordinance reducing profit prospects; yet, the Virginia statutes assure him that such a change will not be made suddenly, arbitrarily, or capriciously but only after a period of investigation and community planning.
We look next to general principles governing judicial review of zoning ordinances.
"The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or *893 substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained. [Citations omitted]." Board of Supervisors v. Carper, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959).
These principles were articulated in a case involving a comprehensive amendment to a comprehensive zoning ordinance. All are sound. Insofar as apposite, we apply them here. But here, the April 17, 1972 ordinance is not a comprehensive zoning ordinance. Rather, it is a piecemeal zoning ordinance; one initiated by the zoning authority on its own motion; one selectively addressed to landowners' single parcel and an adjacent parcel; and one that reduces the permissible residential density below that recommended by a duly-adopted Master Plan.
Inherent in the presumption of legislative validity stated in Carper is a presumption of reasonableness. But, as Carper makes plain, the presumption of reasonableness is not absolute. Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance "must be sustained". If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained.
With respect to the validity of a piecemeal downzoning ordinance such as that here involved, we are of opinion that when an aggrieved landowner makes a prima facie showing that since enactment of the prior ordinance there has been no change in circumstances substantially affecting the public health, safety, or welfare, the burden of going forward with evidence of such mistake, fraud, or changed circumstances shifts to the governing body. If the governing body produces evidence sufficient to make reasonableness fairly debatable, the ordinance must be sustained. If not, the ordinance is unreasonable and void.[1]
The rule we have stated promotes the policy and purposes of the zoning statutes. While the landowner is always faced with the possibility of comprehensive rezoning, the rule we have stated assures him that, barring mistake or fraud in the prior zoning ordinance, his legitimate profit prospects will not be reduced by a piecemeal zoning ordinance reducing permissible use of his land until circumstances substantially affecting the public interest have changed. Such stability and predictability in the law serve the interest of both the landowner and the public.
The rule applied by the trial court is not inconsistent with the rule we have adopted. But the Board argues that the trial court should have found that the evidence satisfied the rule. It says that the action of the old Board in enacting the May 26, 1971 ordinance locating the collector road as shown in landowners' amended application at Falcon Street was a mistake within the meaning of the rule because the 1970 comprehensive plan intended it to be located at Jayhawk Street. We do not agree. Even if we assume that the 1970 plan intended the location to be at Jayhawk Street rather than Falcon Street (and the record does not resolve the dispute), it does not follow that the location fixed in *894 the May 26, 1971 ordinance was a mistake. The statutes do not make the comprehensive plan a zoning ordinance but only a comprehensive guideline for zoning ordinances. The precise location of boundaries between zoning districts is a function of the zoning process, and in making a zoning judgment the governing body must consider not only the general boundary guidelines of the plan but also location of property lines, physical characteristics of the land, and other factors affecting optimum geographical alignment.
The trial court ruled that the evidence did not support a finding of substantial change in circumstances in the 11 month interval between adoption of the May 26, 1971 ordinance (which complied with the guidelines of the new Master Plan) and adoption of the April 17, 1972 piecemeal downzoning ordinance. In its brief the Board conceded that "[t]he testimony from all witnesses on the issues of both sewer and traffic consistently supported the conclusion that there had been no change in circumstances in the area". Indeed, with respect to sewer capacity and facilities for removing pollutants, two witnesses testified that circumstances had improved, and the fire chief testified that in addition to increased departmental manpower, two new fire stations serving the community were in the design stage.
The Board urges us to hold as a matter of law that a changed Board of Supervisors constitutes a "changed circumstance" within the meaning of the rule applied by the trial court. We must decline. As indicated above, the "changed circumstance" which justifies piecemeal downzoning is one substantially affecting the public health, safety, or welfare. Such a change should be objectively verifiable from evidence. A newly elected governing body is not such a change. While a new Board is not bound by the legislative acts of an old Board, in amending them the new Board is bound by rules of law.
Next, the Board argues in its brief that "a zoning action . . . is reasonably related to the health, safety and welfare . . . if the evidence renders the existence of such a relationship fairly debatable". But that principle must be read in context with the rule applied by the trial court. Proceeding consciously under that rule, the Board produced no probative evidence of mistake or fraud in the prior ordinance or of changed circumstances substantially affecting the public health, safety, or welfare. Reasonableness was, therefore, not fairly debatable, and the trial court's holding that "the action of the defendants on April 17, 1972 . . . was arbitrary, capricious and unreasonable and, therefore, illegal, invalid and void" was not plainly erroneous.
Finally, the Board contends that admission of testimony of legislative motive was prejudicial error. Since reasonableness was not fairly debatable and the ordinance was void, we need not consider whether testimony concerning legislative motive was prejudicial.
Finding no prejudicial error, we affirm the decree.
Affirmed.
NOTES
[1] The rule we adopt is similar to the rule applied in Maryland. "[T]o sustain a piecemeal change [from the prior zoning], there must be strong evidence of mistake in the original zoning, or else of a substantial change in conditions." Board of County Commissioners for Prince George's County v. Edmonds, 240 Md. 680, 687, 215 A.2d 209, 213 (1965). (Emphasis supplied). The Virginia rule differs from the Maryland rule in two important respects: (1) The Virginia rule is limited in application to piecemeal downzoning such as that here involved; and (2) The Virginia rule does not require the governing body to produce strong evidence, but evidence sufficient to render the issue of reasonableness "fairly debatable."