## Richmond

### BOARD OF SUPERVISORS OF HENRICO COUNTY, ET AL.

### v.

### FRALIN AND WALDRON, INC.

June 12, 1981.

Record No. 790752.

Present: All the Justices.

*William G. Broaddus, County Attorney; Robert D. McIlwaine, III (Joseph P. Rapisarda, Jr., Assistant County Attorney; Frederick T. Gray; Williams, Mullen, Christian, Pollard & Gray,* on briefs), for appellants.

*William B. Poff; Walter F. Witt, Jr. (Diane McQ. Strickland; William A. Walsh, Jr.; Woods, Rogers, Muse, Walker & Thornton; Hunton & Williams,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this land use dispute, a landowner's optionee has successfully attacked in the trial court a local governing body's decision to approve piecemeal downzoning of undeveloped property. The main issue on appeal is whether the governing body adduced sufficient evidence in the court below to make questions of mistake or change of circumstances fairly debatable. Incidental to the main issue is whether the optionee had standing to sue.

The subject property is a nearly triangular 16.64-acre parcel of land situated on the east side of Woodman Road in northern Henrico County. A flood plain, at places 200 feet wide and containing

dense vegetation, separates the property from single-family dwellings to the east and south. Woodman Road, a two-lane roadway, separates the property from single-family houses to the west. Vacant land lies to the immediate northeast.

Prior to 1964, the subject property had been zoned R-3, single-family residential, as the result of a 1959 comprehensive rezoning. In 1964, appellant Board of Supervisors of Henrico County granted an application to rezone the subject property to R-5, which permitted construction of apartments with a maximum density of about 14.5 dwelling units per acre, or a total of 240 apartment units.

In 1976, appellee Fralin & Waldron, Inc., a private land developer, entered into the first of several exclusive option contracts to purchase the subject property from the owner, Virginia National Bank. Fralin & Waldron then commenced intensive efforts to develop the property. In March of 1978, the developer applied to the County for approval of a plan of development (POD) for construction of a 197-unit apartment project to be called Woodman West. In May of 1978, an attorney for A. N. Silverman and others, residents of the surrounding area, filed an application with the Board requesting that the zoning classification of the property be amended from R-5 to R-3, a category that would not permit apartment development.

In June of 1978, because appellant Planning Commission of Henrico County had failed to approve or disapprove the POD within 60 days, the developer filed one of the proceedings involved in this appeal. As permitted by Code § 15.1-475, the developer petitioned the trial court to enter an order approving the POD.

On July 12, 1978, the Board approved the application rezoning the Woodman West property to R-3. On the same day, in the other proceeding involved in this appeal, the developer amended a previously filed bill for declaratory judgment and asked the trial court to rule that the Board's decision to rezone was arbitrary, capricious, erroneous, unlawful piecemeal downzoning and, therefore, null and void.

About two weeks later, the Planning Commission disapproved the POD because the use sought was "inappropriate or unauthorized" within the R-3 zoning classification.

Subsequently, the trial court heard evidence, mostly ore tenus, and considered numerous exhibits presented by the parties. In two comprehensive, detailed, carefully documented letters, written in

December of 1978 and January of 1979, the trial court found, *inter alia,* that Fralin & Waldron had standing to seek review of the 1978 rezoning and that such rezoning was null and void. In the February 1979 judgment order appealed from, the trial court approved the POD and ordered that the subject property remain zoned as R-5. From the rulings made in the separate cases, we awarded the Board and the Planning Commission this appeal.

Upon the threshold, we address the standing question. The Board (hereinafter with the Planning Commission sometimes referred to as the County) contends the trial court erred "when it determined that the prospective developer, a mere optionee having no legal or equitable interest in the property" could claim the benefit of principles of zoning law applicable to "landowners." Specifically, the County argues, this developer as an optionee may not properly claim the benefit of the rule of *Fairfax County* v. *Snell Corp.,* 214 Va. 655, 202 S.E.2d 889 (1974), to be examined in detail *infra.* We disagree.

The developer's declaratory judgment proceeding was filed under Code § 8.01-184 to -191. Under these statutes, a trial court has the power to issue declaratory judgments in "cases of actual controversy," in "instances of actual antagonistic assertion and denial of right." § 8.01-184. The statutes on the subject are remedial and are to be "liberally interpreted and administered with a view to making the courts more serviceable to the people." § 8.01-191. A plaintiff has standing to bring a declaratory judgment proceeding if he has "a justiciable interest" in the subject matter of the litigation, either in his own right or in a representative capacity. *Lynchburg Traffic Bureau* v. *Norfolk & Western Railway,* 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966).

When Fralin & Waldron filed the declaratory judgment proceeding in June of 1978, it had possessed for more than two years the contractual right to purchase the subject property for $228,000 from Virginia National Bank. The first exclusive option was executed in April of 1976. In August of 1977 the option was exercised and the developer entered into a contract to purchase the land, contingent upon acceptable federal funding being obtained for the proposed project and upon approval of the POD by Henrico County. Subsequently, the contract expired and the developer acquired another exclusive option to purchase, dated in June of 1978. During the two-year period, the developer had filed the POD and expended at least $39,000 in development costs.

Manifestly, there was an actual controversy existing between the developer and the County. But more importantly, the controversy was "justiciable" insofar as Fralin & Waldron was concerned; there was a real and substantial dispute that was appropriate for judicial determination, as opposed to a dispute or difference of "hypothetical or abstract character." Black's Law Dictionary 777 (5th ed. 1979). The developer's interest by virtue of the options was not "hypothetical" or "abstract" because, as an optionee, it had an exclusive, irrevocable, binding contractual right to purchase the real estate according to the terms and conditions of the several option agreements. *See Shirley* v. *Van Every,* 159 Va. 762, 770, 167 S.E. 345, 347-48 (1933). Consequently, Fralin & Waldron had standing to sue and we shall apply the *Snell* rule under these circumstances.

 Turning to the central issue in this appeal, we will initially examine settled rules of appellate review in zoning cases that are applicable under these circumstances. Upon review of a trial court's determination that the granting of a rezoning request is null and void, we accord the court's finding, as in the usual case, a presumption of correctness. We also, however, give full credit to the presumption of validity of the legislative action in question and then, assimilating the two presumptions, we examine the record to determine whether the trial judge's finding is supported by credible evidence. *See Fairfax County* v. *Jackson,* 221 Va. 328, 334, 269 S.E.2d 381, 385 (1980), quoting *Loudoun County* v. *Lerner,* 221 Va. 30, 34-35, 267 S.E.2d 100, 103 (1980).

 Further, we review other basic zoning principles appropriate to the present case. A local governing body's action in granting rezoning is legislative action, presumed to be reasonable. "The presumption is not conclusive; it stands until surmounted by evidence that the action of the legislative body was unreasonable." 221 Va. at 333, 269 S.E.2d at 384. "Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance 'must be sustained'. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained." *Fairfax County* v. *Snell Corp.,* 214 Va. at 659, 202 S.E.2d at 893.

 When, as here, the validity of a piecemeal downzoning ordinance is attacked and the contestant makes a *prima facie* show-

ing "that since enactment of the prior ordinance there has been no change in circumstances substantially affecting the public health, safety, or welfare, the burden of going forward with evidence of such mistake, fraud, or changed circumstances shifts to the governing body. If the governing body produces evidence sufficient to make reasonableness fairly debatable, the ordinance must be sustained. If not, the ordinance is unreasonable and void." *Id.* (footnote omitted).

The County does not dispute that Fralin & Waldron made the required *prima facie* showing here. There being no question of fraud in this case, the focus then is on the County's claim that the 1964 Board made a mistake, and that circumstances had changed between 1964 and 1978.

In the zoning context, we believe that original "mistake" is demonstrated when there is probative evidence to show that material facts or assumptions relied upon by the legislative body at the time of the previous rezoning were erroneous. "Mistake" does not include judgmental errors. "Changed circumstances," on the other hand, means a changed condition, as shown by "objectively verifiable" evidence, that substantially affects the character of the neighborhood insofar as the public health, safety or welfare is concerned. 214 Va. at 660, 202 S.E.2d at 894.

The County contends it introduced sufficient evidence to make fairly debatable the issue whether there was a mistake in the 1964 zoning or a subsequent change in circumstances. We disagree.

Initially, we reject the County's argument that the trial court misconstrued *Snell* and thus required it to "establish" mistake rather than merely furnish evidence sufficient to render that issue fairly debatable. Such a contention gives undue emphasis to the trial court's use of "established" in its written opinion, the word being taken out of context by the County. After noting the developer had made the required *prima facie* showing, the trial court, correctly analyzing *Snell,* wrote, "The evidence presented . . . requires a determination as to whether the Board has produced sufficient evidence of mistake in 1964 or changed circumstances since 1964 to make reasonableness of the 1978 rezoning 'fairly debatable'."

The County next urges the evidence shows that the 1964 rezoning constituted illegal spot zoning. It argues that such evidence renders the question of mistake in that rezoning fairly debatable.

As the County notes, the record shows that at the time of the 1964 rezoning, all of the property surrounding the subject parcel was in a single-family or agricultural zoning category. Further, the County's planning staff reported to the Planning Commission at the time that "need for additional apartment zoning in Henrico County in general and at [the subject] location in particular, is non-existant." After a public hearing, the 1964 Planning Commission determined the proposed "change would constitute an obvious spot zoning and would be harmful to the development of the surrounding area."

The evidence also shows, however, that the 1964 Board not only rezoned the subject property, but within four months, as the result of a separate application, also rezoned to R-5 a 26-acre tract of land that adjoined the subject property to the north. In addition, ten years later the Planning Commission approved, in July of 1974, a POD which would allow 240 apartments on the subject property. Moreover, the record shows that the Board, in November of 1974, acting on recommendations of the County's planning staff and the Planning Commission, adopted the County's 1974-1995 Land Use Plan. This Plan, based on an intensive land use study, recommended that apartments be built on the subject property.

We will agree with the County and assume, but not decide, that the 1964 rezoning constituted "spot zoning." Nevertheless, the County's argument disregards the principle that all spot zoning is not illegal, improper or a mistake. Spot zoning is illegal when the zoning ordinance is designed solely to serve the private interests of one or more landowners. But if the legislative purpose is to further the welfare of the entire county or city as part of an overall zoning plan, the ordinance does not constitute illegal spot zoning. *Wilhelm* v. *Morgan,* 208 Va. 398, 403-04, 157 S.E.2d 920, 924 (1967).

The record is devoid of evidence that the 1964 rezoning was for an illegal purpose or that the 1964 Board relied on erroneous facts or assumptions. The 1964 Board fully considered the issue of rezoning, aware of the recommendations of the planning staff and the Planning Commission. As the trial judge noted, there had been comparatively little development in the area at the time. The subject property was separated from most of the single-family dwellings by a creek and by Woodman Road. The 1964 Board, whose decision, of course, carried a presumption of validity, could

properly have concluded that the introduction of apartments, or other R-5 uses, on the property was in the overall best interests of the County. And the 1964 Board's judgment was confirmed by the 1974 Board's action in adopting the 20-year Land Use Plan which recommended that apartments be constructed on both the subject property and the adjacent 26-acre parcel.

Upon the issue of changed circumstances, the County contended in the trial court that there were changes in the neighborhood between 1964 and 1978 that substantially affected the public interest. The "neighborhood," according to the Board's definition, is the area surrounding the property within three-fourths of a mile. The Board pointed, for example, to evidence that there was a sizable increase in the number of single-family detached homes in the area, that no apartment development had taken place in the area, that the County acquired land bordering Woodman West to the north for the development of public facilities, that an ample quantity of land exists which is zoned and available for multi-family use, and that since 1964 the Board had approved only one R-5 request within the neighborhood, that land being adjacent to a railroad.

The trial court found that circumstances had changed since 1964, but also concluded that the changes had not substantially affected the public health, safety or welfare as shown by objectively verifiable evidence. Noting the court's finding as to change, the County says on appeal the "narrow question" presented on this issue "is whether it is fairly debatable that the acknowledged changed circumstances" substantially affected the public interest. The Board contends the evidence makes the question of change fairly debatable, because it showed a "transition" of the neighborhood since 1964 to an established and stable single-family community. It also urges the record demonstrates that injection of apartments into the area would have a "significantly greater adverse impact" on schools, roads, drainage and property values than was anticipated in 1964.

The trial court found to the contrary and its finding is supported by credible evidence. As to schools, the trial judge found that apartment construction would increase school enrollment, but not beyond the capacity of the one school affected. As to traffic conditions, the court found the increased road use would not reach the capacity of Woodman Road. As to drainage, the court found that there had been a long-standing problem with flooding in the

area and that it could not "be objectively held that the proposed apartments would compound the problem." As to single-family home construction, the trial judge found the increase had been precisely in accord with the 1964 zoning around the subject property. The court noted it was a "change" that was "probably hoped for" in 1964, and which had taken place while Woodman West was zoned R-5.

The trial court considered the development of land adjoining Woodman West to the northeast. Beginning in 1971, the County commenced development of that property for the following public facilities: a parking area for various County vehicles including dump trucks, garbage trucks, school buses and cars; a storage area for various maintenance materials, including sand and gravel as well as concrete pipe; a central County maintenance facility-repair depot for school buses and other heavy vehicles and equipment; and a County mental health center. The County argues that this was a "careful development of [its] public facilities to maintain the harmony of the community." The trial court found that while the facilities were "nicely constructed and shielded from view" the development of that property, in part for industrial use, was "no reason to favor" single-family use over multi-family use on the Woodman West property. We agree.

Indeed, development of the entire area from north to south since 1964 demonstrates the fallacy of the County's argument on this branch of the case; the "change" has resulted in the establishment of an harmonious neighborhood. The use of the land for industrial purposes on the north changes to multi-family at Woodman West. Then south and southeast of the subject property lies a buffer created by the flood plain before single-family use begins. Manifestly, the evidence fails to make fairly debatable that the "change" in the neighborhood has substantially affected the character of the neighborhood insofar as the public health, safety or welfare is concerned.

We have considered the County's other contentions, dealing with the POD application, and find them to be without merit. Also, in view of our decision on the main issues in the case, we do not reach the developer's assignment of cross-error complaining of the trial court's decision that Fralin & Waldron had not acquired vested rights in the R-5 zoning classification.

For all of the foregoing reasons, the judgment appealed from will be

*Affirmed.*