CITY OF VIRGINIA BEACH

V.

VIRGINIA LAND INVESTMENT ASSOCIATION No. 1

Record No. 890780

March 2, 1990

Present: All the Justices

*Gregory N. Stillman (Benjamin V. Madison, III; Hunton & Williams,* on brief), for appellant.

*Conrad M. Shumadine (Randy D. Singer; Robert B. Cromwell, Jr.; T. Scott Carnes; Willcox & Savage; Guy, Cromwell & Betz,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

On August 26, 1986, the City Council for the City of Virginia Beach (City Council) downzoned approximately 403 acres of land owned by Virginia Land Investment Association No. 1 (VLIA) from PD-H1, planned unit development district, to AG-1 and AG-2, agricultural district, by a duly enacted ordinance. The trial court invalidated the zoning ordinance for several reasons. In spite of the massive record compiled by the litigants and numerous legal issues raised, this appeal can be resolved by examining one narrow question: Was the zoning ordinance comprehensive rezoning or piecemeal downzoning which was not justified by a change in circumstances or prior mistake?

In 1970, the City Council, by duly enacted ordinance, zoned and designated approximately 447 acres of real estate along North Landing Road in the City as a planned unit development zone. The City's zoning maps were changed in 1970 to reflect the

property's planned unit development (PUD) zoning status. In 1973, the City Council adopted a comprehensive zoning ordinance which replaced the planned unit development designation with a planned development housing (PD-H) designation. In 1982, the City Council, by ordinance, reclassified the PD-H designation to PDH-1.

VLIA purchased approximately 403 acres of the planned unit development zone in 1973, after the City adopted the comprehensive zoning ordinance. F&R Investments (F&R) purchased the remaining 44 acres contained in the planned unit development zone in 1984. The 1970, 1973, and 1982 City ordinances permitted VLIA and F&R to develop their parcels as one planned unit development consisting of single and multi-family residential, commercial, and recreational uses. The City Council adopted a new comprehensive plan in 1985. This plan recognized VLIA's property and F&R's property as one planned unit development which could be used to develop single and multi-family residential, commercial, and recreational uses.

The City enacted its first comprehensive plan in 1979 which divided the City into nine study areas. VLIA's property is located in the Courthouse-Sandbridge study area. The City's first comprehensive plan created the concept of "the Green Line." The Green Line is a land use planning device which extends east to west across the City. The City's geographical area north of the Green Line is designated urban and the area south of the Green Line is designated rural. The City argues that urban development should not occur south of the Green Line because of inadequate capital facilities and services necessary to meet the needs of future residents. Property owners north of the Green Line would be allowed to develop their parcels.

On August 20, 1986, the Virginia Beach Planning Commission concluded that downzoning property south of the Green Line was not consistent with, nor would it promote or improve the public health, safety, convenience, or welfare of the City. On August 26, 1986, a newly elected City Council enacted a new comprehensive plan and 22 zoning ordinances which affected property south of the Green Line. Some of the August 26, 1986 ordinances downzoned parcels south of the Green Line while other ordinances, enacted during the same City Council meeting, allowed certain parcels to retain their zoning status.

The F&R development property, which was a part of the same planned unit development as the VLIA property, was not downzoned. Property owned by the City of Norfolk which could be used for single family or duplex development was not downzoned. Development parcels owned by Urban Associates (the Foxfire property) and other developers including the Nimmo Corner Corporation (Three Oaks—Phase I, Three Oaks—Phase II, Three Oaks—Phase III) were not downzoned. Even though the purported goals of downzoning were to promote orderly growth and prohibit disorderly or "leapfrog" development, the Virginia Beach City Manager described the F&R development as leapfrog development and the Foxfire and Three Oaks developments as "degrees" of leapfrog development.

 The trial court's decision enjoys a presumption of correctness. However, we also recognize that City Council's 1986 zoning ordinance is presumed to be reasonable. *Board of Supervisors of Henrico County* v. *Fralin and Waldron, Inc.*, 222 Va. 218, 224, 278 S.E.2d 859, 862 (1981). The judiciary will not and must not substitute its judgment for that of the City Council. We have consistently followed the general principles governing judicial review of zoning ordinances:

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.

*Board of Supervisors* v. *Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959) (citations omitted).

 The August 26, 1986 ordinance which downzoned VLIA's property is not a comprehensive zoning ordinance. The zoning ordinances enacted on August 26, 1986 downzoned certain parcels and allowed others to retain their zoning status. The entire amount of the property downzoned represented no more than two

percent of the City's land area. The trial court found that of the approximately 3,500 acres of land involved in the downzoning, 50% of it consisted of one tract, the Sandbridge tract. Eighty percent of the Sandbridge tract was marsh and could not be developed. The trial court was unable to discern why certain properties were downzoned and others were not affected by the August, 1986 zoning ordinances. As we observed in *Fairfax County v. Snell Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974):

> With respect to the validity of a piecemeal downzoning ordinance such as that here involved, we are of opinion that when an aggrieved landowner makes a *prima facie* showing that since enactment of the prior ordinance there has been no change in circumstances substantially affecting the public health, safety or welfare, the burden of going forward with evidence of such mistake, fraud or changed circumstances shifts to the governing body. If a governing body produces evidence sufficient to make reasonableness fairly debatable, the ordinance must be sustained. If not, the ordinance is unreasonable and void.

■ We conclude that the ordinance which purported to downzone VLIA's property is void because it is piecemeal downzoning which was not justified by a change in circumstances or prior mistake. The City admitted, and the trial court concluded, that there had been no change in circumstances substantially affecting the public health, safety, or welfare. There was no evidence of mistake or fraud. *See Fralin and Waldron, Inc.*, 222 Va. at 225, 278 S.E.2d at 863. We recognize that zoning is Virginia's land use planning tool of choice and that comprehensive rezoning can be used as a planning device to control growth. However, the power to zone must be used in the manner prescribed by the applicable Virginia law.

■ VLIA assigned, as cross-error, the trial court's failure to award it interim damages for the "temporary regulatory taking of its property." We do not believe that a taking occurred, and therefore damages are not appropriate in this case. At best, VLIA can only show that it was unable to develop its property as a planned unit development. VLIA, however, was able to lease its property after it was downzoned. The City's ordinance did not constitute a taking because VLIA was not deprived of all economically viable

uses of its property. *Commonwealth* v. *County Utilities Corp.*, 223 Va. 534, 542, 290 S.E.2d 867, 872 (1982). *See, e.g., Hadacheck v. Sebastian, Chief of Police of the City of Los Angeles*, 239 U.S. 394 (1915); *Pace Resources, Inc.* v. *Shrewsbury Township*, 808 F.2d 1023 (3rd Cir.), *cert. denied* 482 U.S. 906 (1987).

We will affirm the decree of the trial court because it properly concluded that the zoning ordinance of August 26, 1986 is piecemeal downzoning which was not justified by a change in circumstances or prior mistake and that damages are not recoverable in this case. We need not, and do not, decide any of the remaining issues raised in this appeal.

*Affirmed.*

JUSTICE LACY, concurring.

Different standards for determining the validity of comprehensive zoning ordinances and piecemeal downzoning ordinances have been established in our prior opinions. In *Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959), we considered a single zoning ordinance which amended Fairfax County's comprehensive zoning law. The ordinance applied to the entire western two-thirds of Fairfax County and required a minimum of two acres for residential home development. If the landowner aggrieved by the ordinance was to prevail, we required that he prove that the ordinance was "clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare." *Id.* at 660, 107 S.E.2d at 395.

Subsequently, in *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 202 S.E.2d 889 (1974), we examined an ordinance which was (1) initiated by the zoning authority on its own motion; (2) addressed to a single parcel and an adjacent parcel; and (3) reduced the permissible residential density below that recommended in the master plan. Based on these characteristics we determined that the zoning ordinance at issue was piecemeal downzoning rather than a comprehensive zoning ordinance like the one considered in *Carper. Id.* at 658, 202 S.E.2d at 893.

We then considered the validity of piecemeal downzoning using the following standard:

[W]hen an aggrieved landowner makes a *prima facie* showing that since enactment of the prior ordinance there has been no change in circumstances substantially affecting the public health, safety, or welfare, the burden of going forward with evidence of such mistake, fraud, or changed circumstances shifts to the governing body. If the governing body produces evidence sufficient to make reasonableness fairly debatable, the ordinance must be sustained.

*Snell*, 214 Va. at 659, 202 S.E.2d at 893.

In this case, then, prior to applying the standard of review, we must initially determine whether the ordinance in issue is a comprehensive zoning ordinance or piecemeal downzoning. Application of the *Snell* criteria to the August, 1986 ordinance which downzoned VLIA's property, demonstrates that the ordinance is piecemeal downzoning.

The ordinance affecting VLIA's property was initiated on the motion of the zoning authority and addressed a single parcel. Although VLIA's land is located south of the Green Line, included in each comprehensive plan indicating non-urban development, planned unit development was repeatedly authorized by the zoning authority. As recently as 1985, with adoption of a new comprehensive plan superseding the 1979 plan, VLIA's property retained planned unit development zoning. Just one year later, however, the zoning authority reduced the density standards for VLIA's property by downzoning it and contemporaneously amending the comprehensive plan to remove the PUD designation. The trial judge characterized this action as "pure argument, for polite language, to say that the downzoning ordinance complied with the then existing land-use plan for that area of the City."

The status of the ordinance which downzoned VLIA's property is not altered, even when considered in conjunction with the other ordinances enacted on August 26. The ordinances taken together affect roughly only two percent of the city's land area. The city considered approximately 325 separate parcels, but downzoned only half of the parcels considered. While the downzoned parcels represented 25% of the city's land zoned for development, as pointed out by the majority, half of the rezoned 3,500 acres—the Sandbridge tract—consisted of marshland which could not be developed. Finally and most telling, similar parcels were not treated

similarly and the city offered little or no justification for this divergent treatment.

While the factors enunciated in *Snell* are not exhaustive, the circumstances of this case fit squarely within the three criteria set out in *Snell* and, therefore, require a conclusion that the ordinance downzoning VLIA's property alone, or in conjunction with the other ordinances enacted at the same time, constituted piecemeal downzoning.

The city admitted that there had been no change in circumstances affecting the health, safety, or welfare of the public; thus, it could not justify downzoning VLIA's property on that ground. Neither is there any evidence of fraud or mistake. Therefore, under the test set out above for reviewing the validity of a piecemeal downzoning ordinance, the ordinance downzoning VLIA's property is void.

I further concur in the majority's conclusion that VLIA is not entitled to interim damages. VLIA relies primarily on the recent United States Supreme Court case, *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles, California*, 482 U.S. 304, 310 (1987), which decided that the Fifth Amendment, applicable to the states through the Fourteenth Amendment, requires "compensation as a remedy to 'temporary' regulatory takings - those regulatory takings which are ultimately invalidated by the courts." The Supreme Court assumed, as did the lower courts, that the regulation deprived the landowner of *all* use of his land and therefore clearly constituted a "taking." While the Court authorized compensation for "temporary takings," it left the issue of whether or not the regulation *actually* deprived the landowner of all use to be determined on remand. *Id.* at 321. Here, VLIA was not deprived of *all* use of its land. In the absence of a "taking" for which compensation is required under the United States Constitution, *First English* is inapposite. In emphasizing that the case was confined to its facts, the Supreme Court acknowledged that it was not dealing with "the quite different questions that would arise in the case of . . . changes in zoning ordinances." *Id.* at 321.

Finally, compensation is not required under the Constitution of Virginia. Article I, § 11 of the Virginia Constitution protects private property from being "taken or damaged for public uses, without just compensation." An unconstitutional taking or damage did not occur in this case because the owner was not deprived of the

use of or right to sell the land. Diminution in salability or potential market value does not rise to the level of a constitutional taking or damage to the property. *Bartz* v. *Bd. of Supervisors of Fairfax County*, 237 Va. 669, 673, 379 S.E.2d 356, 358 (1989).