# CIRCUIT COURT OF ORANGE COUNTY

National Trust
for istoric Preservation
in the U.S. et al.

v.

Orange County
Board of Supervisors

April 29, 2010

Case No. CL09-000240

BY JUDGE DANIEL R. BOUTON

The court has now had an opportunity to review all of the written arguments that have been submitted on the disputed issues that are before the court. The various legal authorities that have been cited by the parties have also been studied. Finally, the court has reviewed the transcript from the hearing that was conducted on February 3rd. Based on the foregoing, the rulings of the court are set forth below.

*The Plea in Bar*

The defendant challenges the standing of all of the litigants. The rulings of the court on standing have been divided into three separate sections. They take into account all of the named plaintiffs, and they are based on the different standing questions that have been raised.

## I. National Trust

The court rejects the argument that the National Trust has standing based on the preemption rationale articulated by Mr. Rosenbaum. The court does not find persuasive the constitutional authority that he relies on in stating his position. Moreover, the National Trust has no direct, specific interest in the Wilderness Battlefield property and no pecuniary or financial obligations that will be directly affected by the issuance of the Special Use Permit (SUP). Therefore, to find that standing has been established here would essentially mean that the National Trust has standing in any case where it unilaterally decides that it must participate in litigation to preserve or protect some historic or public interest in federal property. On this point, Mr. Rosenbaum conceded at oral argument that, to prevail on this issue, the court would almost have to accept an "automatic standing" rule for the National Trust. The court respectfully declines to do this because it can find no decided case in which this rationale was successfully applied.

Furthermore, an examination of the general principles that govern standing under Virginia law suggests that the National Trust would not have the direct interest in the case that would render it an aggrieved party. It should be stressed that the court recognizes the importance of the National Trust to all citizens and acknowledges that the Trust has a broad congressional mandate that underscores its mission. In this case, however, the Trust occupies a place that is similar to the entity that was found by the Virginia Supreme Court not to have standing in *Virginia Beach Beautification Commission v. Board of Zoning Appeals*, 231 Va. 415 (1986). While the National Trust is appropriately concerned about the case because of the potential impact of the Walmart on the Wilderness Battlefield, this factor is not significantly different from the exemplary civic mission that motivated the appellant in *Virginia Beach Beautification Commission*. The Virginia Supreme Court has concluded that general concerns about a public or community issue are not sufficient to allow a party or person to claim standing. Therefore, the plea in bar will be sustained with respect to the National Trust.

## II. The Citizen Plaintiffs

The court does not find it necessary to identify every named plaintiff and to list the specific facts that justify why each one of them has standing. For each plaintiff, the complaint and the written response to the

plea in bar contain this information. For purposes of the court's ruling, however, some of the pleaded facts that demonstrate how the Walmart might have a direct impact on the named plaintiffs should be identified. These facts support the argument that the citizen plaintiffs are "aggrieved" parties with standing to challenge the legislative action in this case.

To begin with, it is alleged that the Lake of the Woods (LOW) residents will be required to share in the costs of a dam upgrade as a result of the approval of the SUP; this will have a direct and immediate financial impact on these property owners. The county argues that before Walmart even requested a SUP for the Orange County site, the LOW residents were responsible for their share of the cost of any improvements. In support of this position, the county points to the recorded covenants that apply to the subdivision and to Virginia's statutory scheme for such projects. The county asserts that, regardless of whether it is the SUP for Walmart or some other event that results in the actual assessment, the LOW residents receive the benefit of any dam upgrade and are still required to make the payments. Therefore, according to the county, any increased fees would not give standing to the LOW residents. Nevertheless, the court finds that the statutory and contractual duties cited by the county would not preclude the LOW residents from asserting their standing as litigants in the case. In evaluating the standing claims, the court must identify the specific action that triggered the duty to pay the increased fees. Here, such action was a legislative one – the board's approval of the SUP. Furthermore, the additional fees constitute a financial obligation that will only affect some citizens – not the general public.

The court will now turn its attention to another factor that supports the standing claims of the citizen plaintiffs. Specifically, due to the close proximity of the Walmart site to their respective properties, the plaintiffs allege that they will be burdened by problems such as traffic, noise, pollution, and litter. On this issue, it should be noted that location plays an important role when it comes to determining whether a litigant has standing; all parties have made arguments that acknowledge this point. Where the property of several of the plaintiffs is located in relation to the site of the proposed Walmart was appropriately emphasized for the court at oral argument. In Virginia, the law does not require that a litigant own land adjacent to a disputed parcel in order to establish standing. Moreover, there is no litmus test or specific distance requirement that must be met before a party has standing to challenge legislative action that might affect his or her property. Rather, in almost all of the decided cases where courts

and trial judges resolve disputes about standing, proximity to the disputed site plays a significant role.

In the case before the court, all of the parties own property that is located near the site of the proposed Walmart. However, the county claims that proximity does not confer standing on these property owners. The county seems to argue that it makes no difference if the parties own property that is close to the Walmart. This is because the Walmart is not going to have the significant, negative impact that is claimed by the property owners. Moreover, even if the parties (or at least some of them) are close enough so that the enjoyment of their respective properties might be affected by the business of the Walmart, this is still not sufficient to establish standing. According to the county, this is because no burden will be imposed on them that would be significantly different from what would be suffered by other members of the community.

Nevertheless, in determining how location affects the question of standing here, the court finds persuasive the analogy that was articulated by Mr. Rosenbaum at oral argument during the hearing on the plea in bar and the demurrers. As suggested by him, the nature and size of a business operation must be considered when evaluating whether property owners in the vicinity would be directly affected by the establishment of the business. Specifically, to use his example, the impact of a small business such as a Starbucks Coffee Shop would be relatively limited. The number of property owners who would have standing to complain about a SUP for a Starbucks might be somewhat small. Perhaps a litigant would have to own property that is extremely close to a Starbucks in order to allege facts that would demonstrate standing. On the other hand, the size and scope of the activities generated by a business as large as Walmart would affect an extended geographical area and a large number of property owners. Thus, the use of land by an establishment like Walmart could have an adverse and immediate impact on far more property owners than would a Starbucks. Moreover, for some who are in close proximity to a large business, the impact might be significantly different and more severe than it would be for the public at large. When this argument is applied to the facts that are alleged in the pleadings before the court, it has considerable merit.

Reasoning that is consistent with the position of the citizen plaintiffs was acknowledged by the Supreme Court of Virginia in *Riverview Farm Associates v. Board of Supervisors*, 259 Va. 419 (2000). There, a number of parties challenged a decision where property was rezoned to allow for a business that would receive and transport municipal

waste. The plaintiffs alleged that the activities of the business would have an adverse impact on their property due to trucking noise, dust, odors, and litter. None of the plaintiffs owned property that was adjacent to the rezoned land. Thus, on the question of standing, the plaintiffs in *Riverview Farm Associates* were similarly situated to the plaintiffs in the present case. The court there sustained a demurrer and dismissed the action on the grounds that the plaintiffs did not have standing. The Supreme Court reversed the trial judge, however, and found that the allegations regarding the potential impact of the business on property owners in the area was sufficient to give them standing:

> We conclude that the trial court erred in sustaining the demurrer to Count I because it stated a cause of action that could be asserted by the plaintiffs independent of the Copelands. Count I challenged the "off-site" proffers regarding truck traffic on the basis of the alleged impact of the proffered conditions on the plaintiff's use of their own properties, not on the basis of any property right held by the Copelands. *The plaintiffs live within sufficiently close proximity to the property that is the subject of the rezoning to possess a "justiciable interest" in the litigation of Count I.*

*Id.* at 427 (italics mine).

In light of the above discussion, the court concludes that the facts pleaded by the citizen plaintiffs are sufficient to justify standing. The plea in bar against them will be overruled.

### III. Friends of Wilderness Battlefield

The facts alleged in support of Friends of Wilderness Battlefield (FoWb)'s standing are different from those that apply to the other named plaintiffs. Specifically, FoWb is a legal entity whose primary connection to the case lies in its interest in the restoration and preservation of Ellwood. It should be noted that the Ellwood property lies in very close proximity (0.78 miles) to where the Walmart site is located. Beyond that, however, it is not necessary to repeat all of the other factual allegations that are contained in the pleadings about Ellwood and FoWb. This information is set forth in the pleadings and is thoroughly summarized on pages 4-7 of the plaintiff's response to the defendant's plea in bar. Also included there is a comprehensive description of the contractual duties and

financial arrangements that characterize FoWb's relationship with Ellwood. These were explained and further developed at oral argument.

Based on what is set forth in the pleadings, the court finds that FoWb is not merely a historical association or a civic association with a general interest in the preservation of the Wilderness Battlefield. FoWb has an interest in the case that is much different from that of litigants who are not able to establish standing, such as the entity in *Virginia Beach Beautification Commission*. The issuance of the SUP for the Walmart will have a direct impact on FoWb's obligations and activities regarding Ellwood.

The court finds that there is some authority in Virginia that supports the standing argument of FoWb. First, in the case of *Henrico County v. F&W, Inc.*, 222 Va. 218 (1981), the Supreme Court of Virginia found that a developer with a contractual interest in the property that was the subject of a zoning dispute had standing to challenge the action of the governing body. It should be noted that the facts in *F&W, Inc.* are different from those that are before the court and that the question addressed there was whether a "justiciable controversy" had been established. What the court finds significant, however, is that the resolution of the standing dispute in *F&W, Inc.* was premised on the contractual rights of the corporation rather than on whether it had any ownership interest in the disputed property. This is analogous to the argument made by FoWb in the present case. Moreover, the reasoning of the Supreme Court in *F&W, Inc.* is relevant. On this point, the court said: "The developer's interest by virtue of the options was not hypothetical or abstract because, as an optionee, it had an exclusive, irrevocable, binding contractual right to purchase the real estate according to the terms and conditions of the several option agreements. ... Consequently, Fralin and Waldron had standing to sue. . . ." *Id.*, at 224.

Similarly, in *Westlake Properties v. Westlake Pointe Association*, 273 Va. 107 (2007), the court addressed the standing of a homeowner's association that instituted litigation against a corporate developer and a corporate contractor over the building of a subdivision community. In finding that the association had standing to bring the action, the court again made reference to contractual obligations. The court observed: "On this record, it is also beyond dispute that the association owned, and was the party legally responsible for the maintenance and repair of the fixtures of the septic system that served the entire development. ... Thus, even though the association did not own the real property, the damage caused to the septic system by the erosion of the slope injured the association and it

had 'an immediate, pecuniary, and substantial interest' in recovering for that damage." *Id.*, at 120.

Finally, the circuit court case of *James River Association v. Commonwealth*, 63 Va. Cir. 602 (2004), is also consistent with the court's rationale concerning the standing of FoWb. While not binding authority in this case, *James River Association* featured a legal entity that was similar in nature to FoWb. The court found that such an entity can be an "aggrieved person" with standing to challenge a legislative action.

As a result of the above discussion, the court finds that the contractual rights and financial commitments of FoWb will be significantly affected by the board's approval of the SUP. These duties and obligations are not abstract or hypothetical. Therefore, FoWb has pleaded facts sufficient to justify standing.

### The Demurrer

### I. Count I

The court rejects the board's argument that the demurrer to Count I should be sustained and that the case should be dismissed with prejudice. The position taken by the board relies heavily on the rationale of *Eagle Harbor v. Isle of Wight County*, 271 Va. 603 (2006). There, the Supreme Court of Virginia affirmed the court's decision to resolve on demurrer the issue of whether the disputed legislative action was "fairly debatable." In upholding the trial judge, the Supreme Court concluded that the action could be dismissed with prejudice without an evidentiary hearing.

The present case, however, can be distinguished from *Eagle Harbor*. Specifically, the principal factor that justified the dismissal in *Eagle Harbor* was that, when the demurrer was argued, the plaintiffs submitted to the court more than just the factual allegations of their pleadings. Rather, they actually incorporated into the pleadings evidence in the form of two key reports. Therefore, the trial court had before it a sufficient record from which it could determine whether a *prima facie* case regarding the unreasonableness of the action had been established under the principles of law that govern such an analysis. On this issue, the Supreme Court said:

> In many cases, the developer's argument would be accurate as a practical matter because the facts alleged could not be deemed sufficient to rule as a matter of law at the demurrer

stage since there is no venue for a defendant's factual presentation. In evaluating a plaintiff's pleading upon demurrer, the only factual allegations before the court would be those alleged by that pleading. If those factual allegations, deemed true, establish the plaintiff's *prima facie* case and required a rebuttal for determining the merits, the trial court could not act without the taking of evidence.

However, in the case at bar, the developers not only made allegations of fact in their pleading, but enlarged the scope of facts before the trial court by incorporation of the Dolecki Report and the County Report. As noted earlier, the trial court was entitled to consider these documents in its determination of the demurrer.

By virtue of the extended nature of the developer's pleading with the incorporated reports, the trial court was in a unique position in the consideration of the demurrer to have evidence of the purported unreasonable nature beyond the bare allegations in the pleadings as part of the record for decision.

*Id.*, at 620-21.

Here, the plaintiffs rely only on their pleaded facts in arguing that the demurrer should be overruled. What is alleged, if proven to be true, would support an argument that the issuance of the SUP was an unreasonable legislative action. Assuming the truth of the pleaded facts, the county would then have to rebut the *prima facie* case with evidence of reasonableness. Ultimately, as argued by the county, the court may well find that the entire record contains substantial and compelling evidence that supports the reasonableness of the board's action. Thus, one possible outcome on Count I is that the court might conclude that the record reflects nothing more than a highly contentious, hotly debated, divisive civic argument over a community land use issue. When the matter was decided by the board, one side won and one side lost. Even though the board was confronted with vigorous opposition and disagreement, the decision to issue the SUP was "fairly debatable." On the other hand, depending on what factual findings are made, the court might decide that enough evidence has been elicited to establish a *prima facie* case and that such case has not been sufficiently rebutted. At the very least, therefore, the court must consider evidence that supports or discredits the pleaded facts

in order to resolve the issues raised by this count. As a result, a hearing on the merits on Count I must take place and the demurrer will be overruled.

## II. Count II

An extended discussion of the claim raised by this count is not required or merited at this point. The court finds that the pleadings reflect a factual dispute between the parties over whether sufficient legal notice was given for the meeting at which the Planning Commission purportedly made a recommendation to the Board of Supervisors regarding the SUP. The full record must be examined before the court can determine whether the notice was sufficient or insufficient.

Once the factual dispute over the notice for the Planning Commission meeting has been resolved, the court can decide whether or not the Planning Commission made a legally valid recommendation to the Board. The court can then turn its attention to the law regarding how planning commission recommendations should be viewed. The court is aware that both sides have made several arguments on this point. At this stage of the proceedings, however, the court declines to analyze the arguments or comment on the respective positions that have been taken by the parties. The demurrer will be overruled, and the claim will be heard on the merits.

## III. Count III

In asking the court to sustain the demurrer to this count, the county argues that no specific provisions must be included in the zoning ordinance to satisfy the requirements of Va. Code § 15.2-2283. It is up to the local governing body to determine how to address historical preservation. Zoning is a legislative function reserved to the board, and the county relies on the doctrine that judicial review is limited to deciding whether or not the actions of the board were reasonable. Subsequent to the hearing on the plea in bar and the demurrer, the county submitted to the court a number of provisions of the Orange County Zoning Ordinance. The county asserts that these provisions establish the "reasonableness" of the legislative action taken by the board under § 15.2-2283. In support of this position, the county cites *Board of Supervisors of Fairfax County v. Miller and Smith, Inc.*, 242 Va. 382 (1991).

The problem with the county's argument is that the issue before the court is based on a demurrer. Therefore, in deciding whether the claim

should be dismissed, the court must accept the pleaded facts as true. Under this standard, three points must be taken into account regarding the position of the plaintiffs on this count.

First, the plaintiffs assert that the court need not even reach the question of whether the county's actions under § 15.2-2283 were reasonable or unreasonable. Rather, the initial argument of the plaintiffs is that the county took no action at all to comply with § 15.2-2283. Thus, what was submitted by the county after the hearing has no significance because it consists of nothing more than a few random provisions that are scattered throughout the ordinance. These provisions were not passed in order to preserve historic areas. Thus, by failing to include provisions in its ordinance that explicitly protect "against destruction of or encroachment upon historic areas", the plaintiffs assert that the board has simply ignored the mandate of the statute. As a result, the SUP granted to Walmart was invalid because it was premised on an ordinance that violates § 15.2-2283.

Second, if the court agrees with the plaintiffs that the board failed to act under § 15.2-2283 but does find that the "reasonableness" inquiry suggested by the county is applicable, the plaintiffs still argue that the demurrer should be overruled. Specifically, the plaintiffs maintain that the failure of the county to act is the unreasonable legislative action in this case. In short, doing nothing under the statute is not a legislative option and is thus unreasonable.

Third, if the court finds that the county actually did something under § 15.2-2283, the plaintiffs then claim that what little the board included in the ordinance is woefully inadequate under the statute. Therefore, even if the provisions submitted to the court were actually promulgated based on § 15.2-2283, they do not provide adequate protection against the destruction or encroachment of historic areas. Since they were not sufficient to meet the requirements of the statute when they were passed, the provisions are unreasonable.

Finally, it should be noted that the authority relied on by the county, *Miller and Smith, Inc.*, can be distinguished from the case before the court. To begin with, *Miller and Smith, Inc.* involved a rezoning application that had been denied by the governing body. The case was then appealed to the circuit court. At the hearing, the dispute was about the reasonableness of a number of different zoning categories for the property. After considering the evidence, the trial judge rejected the zoning category that was selected by the governing body (R-5) and ordered that the property be rezoned to a category (R-8) that the court found was "more reasonable." For purposes of the issue that is now before the court, it should first be stressed that

*Miller and Smith, Inc.* did not include a challenge to the validity of the governing body's zoning ordinance. There was no claim that the governing body failed to include certain necessary and mandatory provisions in its ordinance. That issue was never raised, addressed, or even argued in *Miller and Smith, Inc.*

The second way in which *Miller and Smith, Inc.* can be distinguished is that the "reasonableness" dispute there was not before the trial court or the Supreme Court based on a demurrer. Rather, before the circuit court judge ruled on the issue, a trial was conducted and evidence was presented to the court. Similarly, on appeal, the Supreme Court of Virginia did not rule that the trial judge was incorrect for failing to sustain a demurrer. Rather, the court reversed the ruling of the trial judge on the "reasonableness" issue after a full examination of the entire trial record. Thus, *Miller and Smith, Inc.* does not support the county's argument that the present case should be dismissed because the pleadings alone somehow demonstrate the "reasonableness" of the board's alleged actions under § 15.2-2283.

In light of the above discussion, the court finds that whether the board did or did not act under § 15.2-2283 is a disputed issue. In addition, the impact of the statute, if any, on the issuance of the SUP remains in dispute. Regardless of how the court resolves the arguments of the plaintiffs on this claim, it should not be dismissed without further proceedings. The arguments need to be addressed on the merits. Therefore, the demurrer will be overruled.

## IV. Count IV

It is not necessary to engage in a detailed discussion of Count IV. As the court observed at oral argument, however, it appeared appropriate to suggest that the parties attempt to resolve the issue of whether the disputed access road is public. Discussions apparently occurred without an agreement being reached. The plaintiffs now intend to take a voluntary nonsuit of this count in accordance with Va. Code § 8.01-380. The court respectfully declines to comment on the information that was submitted by the parties about their efforts to settle this question. Furthermore, as a result of the anticipated nonsuit, it is not necessary for the court to issue a formal ruling on the demurrer.

Nevertheless, in order to eliminate the time and expense of further work, the court will clarify one issue for the parties. Specifically, Mr. Rosenbaum asks that the court insert language in the order stating that the

nonsuit of Count IV will not affect the admissibility or inadmissibility of evidence on the remaining counts. The court concludes that this language should not be included because it is not necessary to confirm the obvious. Evidence will be admitted or excluded based on what has been pleaded in the other counts and on the rules of evidence. In this regard, all of the facts pleaded under Count IV may be relevant to some of the other counts; only some of them may be relevant; or perhaps none of them may be relevant. However, the answer to these questions will not be affected or governed by whether or not the disputed evidence was mentioned or included in a nonsuited count.