## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Hennage Creative Printers, Inc., et al.

v.

City of Alexandria

April 6, 1995

Case No. (Chancery) CH931480

BY JUDGE ALFRED D. SWERSKY

In their Amended Bill of Complaint, Plaintiffs attack the 1992 rezoning plan of the City and the rezoning of certain parcels of land on several grounds. They allege that the zoning constitutes a taking of private property without just compensation under the Constitutions of Virginia and the United States; that the zoning and site plan ordinances of the City are vague and uncertain and beyond the scope of enabling state legislation; are arbitrary and capricious; and violate their rights under Title 42 U.S.C. § 1983.

After trial on the merits, subsequent to the denial of Defendant's Motion for Summary Judgment, the Court took the matter under advisement, and memoranda have been submitted.

Plaintiffs are Hennage Creative Printers, Inc. (Printers) and, added by agreement, Joseph and June Hennage, individually. The property was acquired by Plaintiffs in 1981, at which time the I-1 zoning allowed a floor to area ratio (FAR) of 6 and a height limit of 150 feet.

The corporation's acquisition was financed by the issuance of Industrial Revenue Bonds, approved by the City Council. In 1981, the I-1 zone was changed. This zoning permitted industrial and commercial office uses at a 2.5 FAR and a maximum height of 77 feet. The current zoning, adopted in 1992 as part of 14 small area plans in the City's master plan, is Commercial Residential Mixed Use-High (CRMU-H). This zoning permits residential, office, commercial, or mixed uses at a 1.25 FAR; special uses by

permit at 1.5 FAR and a height maximum of 50 feet for commercial and 77 feet for residential uses. The current use by Printers was permitted under the original zoning and can continue indefinitely as a legal "non-complying" use.

Joseph Hennage testified that he was "induced" to purchase the property by the Industrial Revenue Bonds and the Corporation had a history of using property for its printing purposes and selling when the market was favorable. He stated these were his plans for this property and that he chose Alexandria because of its history of the appreciation of real estate values and that he would not have purchased the property if the zoning was going to be changed.

The rezoning was described by Sheldon Lynn, Director of Planning for the City. The City was divided into 14 small areas consisting of neighborhoods, and a series of meetings were held in each area to define the goals for the particular area and how they could be incorporated into the Master Plan. A Master Plan Task Force incorporated the small area goals into the Master Plan which was ultimately passed by City Council in 1992. The goals of the Braddock Road Small Area Plan were low scale and historic in nature, aimed at maintaining the residential character of the neighborhood. Lynn opined that the overall result was "one of the most comprehensive I have ever seen."

Value witnesses were presented by both parties on the question of the loss of value as a result of zoning changes. Both witnesses agreed that the highest and best use of these properties were their current uses, but Plaintiffs' witness concluded that there had been a diminution in value of one million dollars due to the rezoning. Such a conclusion finds little factual support in the evidence. The City's witness puts the diminution in value due to "down zoning" at one hundred eighty-five thousand dollars and attributes any other diminution to market conditions. The Court will rule on Plaintiffs' claims separately.

I. *The Rezoning Resulted in a Taking of Private Property Without Just Compensation*

Plaintiffs have failed to prove the down-zoning amounts to a regulatory "taking" of his property under neither the Constitution of Virginia nor the Constitution of the United States. They rely on the Supreme Court of the United States' decision in *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S. Ct. 2886 (1992), for the proposition that even if a court determines that Plaintiffs have not lost all economically beneficial uses in

their property, a further case-by-case analysis should be made to determine if a taking has occurred. The Court must engage in a factual balancing test to determine if a given regulation "goes too far." The Virginia Supreme Court has not dealt with this issue post-*Lucas,* and its last decision adhered to the rule that in order for there to be a taking, the land owner must be deprived of "all economically viable uses of his property." *Virginia Beach v. Virginia Land Invest. Ass'n.,* 239 Va. 412, 416 (1990). Cited for this proposition is *Commonwealth v. County Utilities,* 223 Va. 534 (1982), which relies upon Article I, § 11, of the Virginia Constitution, not the Fifth Amendment to the Constitution of the United States. However, the *County Utilities* case follows, cites, and relies on *Penn Central Transportation Co. v. New York,* 438 U.S. 104 (1978), for the proposition that a taking must result in the loss of all "reasonable" uses. Therefore, this Court concludes that the test of whether or not there is a taking under Article I, § 11, of the Virginia Constitution is the same as under the Fifth Amendment to the Constitution of the United States. In short, this Court will follow the *Lucas* test.

The evidence indicates a diminution in value due to the regulation. The Court finds this diminution to be $185,000; however, even if the Court accepted the testimony of Plaintiffs' witness as to a loss of one million dollars, this would not in and of itself constitute a taking. Diminution in value alone is not enough (*Penn Central, supra,* 438 U.S. at 24). *Lucas* does not change this. *Lucas, supra,* —— U.S. ——, 112 S. Ct. at 2894.

Plaintiffs retain the property for its present uses, and these uses have been described by witnesses for both parties as the highest and best use of this property, particularly the corporate use as income-producing property. Because the property is classified as non-complying, it may be used indefinitely.

The property retains as an alternative use, sale for development. All witnesses agreed that the property retains this use although at lesser density than under the prior zoning. This is a possible future use, the value of which would be determined by market conditions at the time of the decision to sell.

The exercise of zoning powers by the City does not rise to the noxious-use prevention alluded to in *Lucas*; however, zoning laws are recognized as necessary for the general welfare of the public and as a necessary power over private property rights. The City has shown the necessity of the regulation and the degree to which study, discussion, public hearings, and citizen input played a role in the formulation of the small area plan in

question. In balancing the parties' rights, the Court finds the regulation in this case to be a necessary and proper exercise of the zoning power not amounting to a taking of Plaintiffs' rights to private property. Their claims for just compensation on this ground are denied.

II. *The Zoning was "Piecemeal," Not Comprehensive, And is Void*

The rezoning of Plaintiffs' property occurred as a result of a city-wide comprehensive study of the zoning requirements of the City. Plaintiff apparently complains that the breaking down of the City into fourteen small areas for purpose of a study constitutes this zoning as "piecemeal." This argument overlooks the use to which the small area studies were put; i.e., as part of a city-wide master plan coordinated by a Master Plan Task Force and adopted by ordinance to implement the Master Plan. See Code of Virginia, § 15.1-447. Plaintiffs' property was not singled out nor was the Braddock Road small area. The zoning studies were City-wide rather than aimed at specific parcels or small areas. The resulting density of Plaintiffs' property is not less than provided in the Master Plan adopted as a result of the study. See, *Fairfax County v. Snell Corp.,* 214 Va. 655, 658 (1974).

Since there is no *prima facie* showing of piecemeal zoning, there is no burden on the City to show changes in circumstances, mistake, or fraud. See, *Virginia Beach v. Virginia Land Investment, supra,* at 418 (Justice Lacy's concurring opinion.)

Plaintiffs' prayer for injunctive relief on this basis will be denied.

III. *The Zoning Ordinance Granting the Planning Commission the Power to Consider Off-Site Public Improvements is Ultra Vires and Void as an Improper and Vague Grant of Legislative Authorities*

It is not clear from the pleadings what relief is sought by Plaintiffs if the Court were to find the special use permit procedure violates the so-called Dillon Rule. No evidence was adduced at trial that Plaintiffs had applied for any such special use permit and been denied on the basis of the ordinance that they assert is unconstitutional. The City argues that Plaintiffs lack standing to raise these issues. The Plaintiffs here have shown a potential injury by being required to submit to the special use permit procedures if they develop or subdivide their properties and that they face an immediate and direct pecuniary disadvantage as a result of the existence of these procedures. This is a sufficient showing of standing. *Fairfax County v. Southland Corp.,* 224 Va. 514, 520 (1982).

Plaintiffs argue that under the Dillon Rule, the City is precluded from adding requirements to its special use permit procedures not authorized by Acts of the General Assembly dealing with zoning and special use permits. They argue that the provisions of the ordinance (§ 11-410 of the Alexandria Zoning Ordinance) that require the Planning Commission to consider the adequacy of off-site facilities, improvements, or services is not authorized by any act of the Commonwealth and that there is legislation exclusively limiting the locality's rights to requiring a *pro rata* share of off-developments improvements necessitated by the developer or subdivider's use of the property, Code of Virginia, § 15.1-466(A)(10).

It is clear that, absent a specific grant of authority to allow consideration of off-site facility improvements, the Dillon Rule is implicated. See, *Board of Supervisors v. Horne*, 216 Va. 113 (1975). However, Plaintiffs' argument ignores the specific grant of such authority to the City in Charter §§ 9.24 and 9.33. These provisions are explicit grants of authority to the City to consider the off-site facilities set out in § 11.410(D) of the Zoning Code. The General Assembly has therefore decided the question of the balance between the important considerations of individual property rights of its citizens and the health, safety, and general welfare of the public that so concerned the Supreme Court in *Horne, supra,* at 120. These sections are clear in their grant of authority to the City to regulate its land use either by zoning or by special use permit procedures and to base such regulation on the availability of off-site public facilities set forth in § 11-410(D).

The Court further finds that the standards enumerated in § 11-410(C) and (F) are not vague and uncertain and furnish a reasonable basis for determining the standards to be applied by the Planning Commission. It does not constitute an impermissible grant of discretion. *Ames v. Town of Painter*, 239 Va. 343 (1990).

While Plaintiffs are correct as a matter of law that Planning Commissions are not usually vested with the kind of broad discretion that involves zoning decisions, here, once again, the General Assembly has specifically authorized the City to enact rules and regulations and to specifically authorize the *Planning Commission* "to consider the site plans and plats in light of the regulations and restrictions . . . ." Charter § 9.33 (emphasis added).

Plaintiffs' argument as to the Hennage property that the City "induced" purchase of the property by the offering of Industrial Revenue Bonds and

therefore the downzoning somehow *ipso facto* becomes a taking is clearly without merit. The clear language of the bond precludes any such argument.