## Richmond

### VIRGINIA HISTORIC LANDMARKS COMMISSION, ET AL. V. BOARD OF SUPERVISORS OF LOUISA COUNTY, ET AL.

November 24, 1976.

Record No. 751285.

Present, All the Justices.

*J. Thomas Steger, Assistant Attorney General; Emanuel Emroch (Andrew P. Miller, Attorney General, on briefs), for plaintiffs in error.*

*William A. Perkins, Jr.; W. W. Whitlock (Elizabeth H. Woodard; Stephen C. Harris, Commonwealth's Attorney; S. Page Higginbotham; Higginbotham & Higginbotham; McGuire, Woods & Battle, on briefs), for defendants in errors.*

HARRISON, J., delivered the opinion of the court.

The Louisa County Board of Supervisors and certain landowners filed their petition in the court below seeking a judicial review of a resolution adopted by the Virginia Historic

Landmarks Commission, identifying the Green Springs Historic District as a landmark for the Virginia Landmarks Register.[1] Their petition alleged that the lower court had jurisdiction pursuant to Virginia Code § 9-6.13 and its "general jurisdiction on matters affecting real estate within the jurisdiction of this Court". The Landmarks Commission made a motion to dismiss the petition on the ground that the Commission is not an agency subject to the General Administrative Agencies Act (Code §§ 9-6.1, *et seq.*).[2] The trial court overruled the motion to dismiss, heard the case, concluded that appellees were entitled to relief and remanded the cause to the Commission with directions.

This controversy springs from the attempted location by the Commonwealth of Virginia of a prison-diagnostic center in an area of Louisa County commonly known as Green Springs. Numerous property owners and others voiced strong opposition to the proposed location. The then Governor of Virginia, reacting to this opposition, announced on October 10, 1972, that the prison facility would be moved if the Green Springs area in which it was to be located could be preserved. Responding to the Governor's request, the staff of the Commission made its investigation and study incident to developing plans "for preserving the significant aspects of the Green Springs area". Numerous exchanges occurred between representatives of the Commission and interested parties, including the Board of Supervisors. Representatives of the Board, as well as other parties opposed to the proposed designation of the Green Springs Historic District, appeared at a meeting of the Commission held February 20, 1973. It was at this meeting that the Commission took the action which precipitated this case. Minutes of the meeting disclose the following resolution:

---

[1] Historic Green Springs, Inc., was permitted to intervene as a party by order of the lower court. The petitioners, in addition to the Louisa County Board of Supervisors, were Elgin Nininger, Betty Craig Nininger, E. T. Walton, Walton Lumber Company, Inc., M. F. Peers, Jr., Norma T. Peers, A. H. Morris, W. E. Dowell, D. J. Dowell, L. J. Purcell, Alfred D. Peers, Elizabeth D. Peers, Joseph M. Dymacek, Audrey Hughson, J. Lewis Dobbins and Martha H. Dobbins.

[2] The General Administrative Agencies Act (Code §§ 9-6.1 to -6.14) was repealed by Acts, 1975, ch. 503. It has been superseded by Title 9, ch. 1.1:1, Code of Virginia, the Administrative Process Act, adopted by the 1975 General Assembly (1975, ch. 503).

"After discussion, upon motion made . . . seconded . . . and adopted . . . the Green Springs Historic District, Louisa County, was identified as a landmark for the Virginia Landmarks Register and the Governor's Office was to be notified."

The district contains approximately 14,000 acres and is the largest historical district, in terms of acres, in the state. The Commission's staff described Green Springs as "a comparatively unchanged example of an agricultural region which prospered during the nineteenth century". Prior to February 20, 1973, the Commission had designated four houses located in the area as individual historic landmarks. It suffices to say that the identification of the 14,000 acre area as a historic district provoked both favorable and unfavorable comment. Controversy developed over the propriety of designating a land area as a historic district and over the effect on land values of the action taken by the Commission. Some property owners demanded that their properties be removed from the district.

A further and more detailed review of the voluminous testimony and exhibits would be of questionable value in the resolution of the present appeal. In brief, the appellees claim, *inter alia*, that the action of the Commission places a cloud against and jeopardizes the free marketability of their property, and takes certain property rights from them without compensation and without due process. They say that the Commission acted not only arbitrarily and capriciously but also acted without having a public hearing or giving public notice. The Commission responds that it has acted in strict accordance with the provisions of Title 10, Chapter 11, Code of Virginia (Repl. Vol. 1973); that its sole act has been to identify the Green Springs area as a historic district; that this amounted only to a recognition of the qualities of Green Springs; that it imposed no restrictions on the property owners; and that it did nothing to affect the value of their property. The Commission argues that any preservation of the area is a matter left to the county government by statute.

The trial judge found that "while the establishment of a historic district affects property rights, it is not apparent that an identification of a historical district does anything more than encourage the County or City to adopt such rules and regulations as the [Landmarks] Commission may develop and recommend

for the preservation of historical, architectural and archeological values". However, being of opinion that such identification set in motion a pattern of restriction and control of the future use of the property involved, he said "the next step is that of governmental action by the Commission and the local governing body in establishing rules and regulations for the preservation of its historical, architectural and archeological values, without reference to the rights of the property owner". The trial judge concluded that a property owner was entitled to be heard at some stage in the process and to have an appeal from an adverse ruling, and that, since these remedies are not expressly provided for anywhere in the Code sections creating and outlining the duties of the Commission, Code § 10-138(h), discussed *infra*, was defective. The court then entered an order remanding the cause to the Commission "for modification of the geographic area designated as Green Springs Historic District by removing therefrom all properties the owners of which have not consented to their inclusion therein and for such further action as may be appropriate and not inconsistent with this order and the written opinion heretofore handed down. . . ."

The basic question here involves a construction of the statutory powers conferred upon the Commission, and whether it has the authority to enact rules having the effect of law or to adjudicate contested cases. Without such authority it is not an agency within the purview of the General Administrative Agencies Act.[3]

The Commission was created in the executive department of the state government by Acts of Assembly, 1966, ch. 632, which is codified in Title 10, Chapter 11, Code of Virginia (Repl. Vol. 1973). Code § 10-138 vests the Commission with certain powers and duties which we summarize as follows:

---

[3] In Code § 9-6.2 of the General Administrative Agencies Act, repealed in 1975, the terms "agency", "rule" and "contested case" were defined, in pertinent part, as follows:

"(a) *'Agency'* means any State department, commission, board or officer, having statewide jurisdiction, authorized by law to make rules or to adjudicate contested cases. . . .

"(b) *'Rule'* means any regulation . . . of general application and future effect affecting private rights, privileges or interests, promulgated by an agency to implement, extend, apply, interpret or make specific the legislation enforced or administered by it. . . .

"(c) *'Contested case'* means a proceeding before an agency in which the rights, duties or privileges of a person are required by law to be determined after a hearing. . . ."

(a) "[D]esignate as an historic landmark" buildings and sites which constitute significant historical, architectural and archeological locations.

(b) Prepare a register of those buildings and sites which meet the requirements prescribed for the historic landmark designation.

(c) "With the consent of the landowners, certify and mark, with appropriately designed markers, buildings and sites which it has registered."

(d) "Establish standards for the care and management of certified landmarks"; withdraw certification if prescribed standards are not maintained.

(g) "Establish historic districts for registered landmarks and designate the area thereof by appropriate markers provided the county or city in which the district or registered landmark is located fails or refuses to take such action as is necessary to establish and maintain such districts."

(h) "Identify historical districts for registered landmarks and aid and encourage the county or city in which the district or landmark is located to adopt such rules and regulations as the Commission may develop and recommend for the preservation of historical, architectural, or archeological values."

Subparagraphs (e), (f), (i), (j) and (k) of Code § 10-138 provide the Commission with general powers, including the sale and purchase of registered landmark sites. The Commission is not vested with the power of eminent domain.[4]

At the time the Commission, pursuant to Code § 10-138(h), identified the Green Springs Historic District, neither notice nor a public hearing was a prerequisite to its performance of any duty it was authorized by statute to perform. Subsequently, the 1975 General Assembly (Acts, 1975, ch. 282) enacted Code § 10-138.2 to provide that in any county or city in which the Commission determines to identify or establish historic districts, it shall notify the governing body of such county or city

---

[4] Other provisions of Title 10, Chapter 11 of the Code, not involved in this appeal, provide that when the commission designates a structure or site as a "certified landmark", or "establishes a historic district", the local assessor of the district must be notified and the effect of such action must be considered in the assessment of the property.

of its proposed action prior to officially making same. The governing body, by resolution, may compel the Commission to hold a public hearing and to publish notice thereof "for the purpose of supplying additional information to the Commission". The statute defines a historic district as "a geographically definable area, which contains a significant concentration of historic buildings, structures or sites, sharing a common historical, architectural or cultural heritage".[5] The purpose of the chapter establishing the Commission is set forth in Code § 10-145, where it is said:

> **Construction of chapter.** — This chapter being designed for the public welfare and the perpetuation of those structures and areas which have a close and immediate relationship to the values upon which this State and the nation were founded, and which serve as a means of illustrating to present and future generations the inherent worth of such values and the unchangeable truths thereby demonstrated, shall be broadly construed in order to accomplish the purposes herein set forth. (1966, c. 632.)"

The Commission consists of members selected because of their education, background and knowledge of Virginia's historical, architectural and archeological treasures. The primary responsibility of the Commission is to make a survey of, identify, designate and establish historical landmarks, buildings, structures and sites, and then to aid, advise and encourage in their preservation.[6] We find no authority for the Commission to adopt or promulgate rules, regulations or edicts that are binding upon the localities or its citizens, or which have the force and effect of law. The Commission's identification of an area of land in Louisa County as a historical district was a hortatory act, and was not couched in terms of command. It did not determine any property rights of the landowners in the district.

---

[5] While the controversy which precipitated this case may have prompted the enactment of Code § 10-138.2, the General Assembly expressly provided "the provisions of this section shall not be so construed as to affect any pending litigation".

[6] The 1976-77 Register of Regulations of the Agencies of the Commonwealth, published under the supervision of the Virginia Code Commission, referring to "Historic Landmarks Commission, Virginia", reports at p. 62: "The agency has issued no regulations."

While the identification of a certain building, site or area as historical conceivably could have some incidental effect on the value of the property, the evidence in this case fails to show that the impact thereon would be so immediate, direct or significant as to assume constitutional proportions and to necessitate the requirement of public notice or public hearing. The action taken by the Commission was neither individual in impact nor condemnatory in purpose. It is clear that when the General Assembly passed the Act creating the Virginia Historic Landmarks Commission it recognized that the performance of those duties entrusted to the Commission would not require public participation. Since the legislature did not give the Commission the power to adopt a substantive rule it did not require that notice be given of any proposed action by the Commission or provide interested persons with an opportunity to comment.

All that has happened is that the Commission has recognized that a certain area has historical significance and identified it as such. Perhaps the choice of language used in its resolution, "identified as a landmark for the Virginia Landmarks Register", was ill-advised, and the area should have been identified as a historic district on the ground that it is an area which contains registered landmarks. However, this is of little importance for obviously the Commission acted under Code § 10-138(h). The trial judge recognized that at most the resolution of the Commission does no more than encourage the county to adopt rules and regulations which the Commission might recommend. There is no compulsion upon the Board of Supervisors of Louisa to enact any regulation respecting the identified Green Springs Historic District. Neither is there any compulsion upon the Board to give the resolution any weight in its consideration of zoning, rezoning or other matters affecting the land in the district. If and when regulations are ever enacted pursuant to Chapter 10, Title 11 of the Virginia Code, we have no reason to assume that they will be adopted in a manner which will abridge the property rights of the landowners or deny anyone procedural due process. We cannot speculate that the resolution is but an opening wedge to be followed by actions that may be unconstitutional. Neither can we speculate on what future action may be taken by the United States Department of the Interior or by its Secretary pursuant to federal law, or to what

extent, if any, the resolution of February 20, 1973, will be considered.

The Virginia Historic Landmarks Commission is not an agency as defined by Code § 9-6.2 because the General Assembly did not authorize the Commission to make rules or to adjudicate contested cases. The resolution identifying the Green Springs Historic District could not be construed as a "rule" of general application, and the proceedings conducted by the Commission incident to the adoption of the resolution was not "a contested case" involving such rights, duties or privileges of a person that are required by law to be determined after a hearing.

In *Art Commission* v. *Silvette*, 215 Va. 596, 212 S.E.2d 261 (1975), we were confronted with issues that are similar to those involved here. The Art Commission functions under the provisions of Chapter 2, Title 9 of the Virginia Code, and its primary responsibility is to advise the Governor whether a work of art should become the property of the Commonwealth. The Governor may accept gifts to the Commonwealth of works of art only if the Art Commission deems such gifts worthy of acceptance. In *Silvette* certain rules and procedures of the Art Commission were challenged upon the ground that they had the effect of exerting prior restraint and coercion on Silvette in violation of his First Amendment rights. Silvette sought a declaratory judgment pursuant to Code § 9-6.9, and the Art Commission filed a motion to dismiss on the ground that it was not an agency subject to the General Administrative Agencies Act. We held:

"There is no authority in the statute, under which the Art Commission was created and functions, for the enactment of rules having the effect of law or for the adjudication of contested cases. There is no requirement that the Commission conduct hearings. Thus, it is not an agency within the purview of the General Administrative Agencies Act, and the trial court erred in accepting and retaining jurisdiction of this controversy under Code § 9-6.9." 215 Va. at 598, 212 S.E.2d at 262.

In the instant case, unlike in *Silvette*, it is apparent that the relief sought by appellees was sought under Code § 9-6.13(a), which provides for judicial review for "any person aggrieved by a final decision in a contested case". Appellees answer the

jurisdictional argument by asserting that while their case might have been "more reasonably or clearly presented" under Code § 8-578, neither the litigants involved nor this Court should be concerned about the form of the proceeding. While we are seldom at liberty to ignore the form of the pleading in cases before us, we do observe here that even if the trial court had treated the proceeding as having been brought under the general declaratory judgment statute, Code § 8-578 (Repl. Vol. 1957), or under the special statute in the General Administrative Agencies Act, Code § 9-6.9, the resolution adopted by the Commission on February 20, 1973, did not give rise to a justiciable or actual controversy. *See Art Commission* v. *Silvette, supra,* 215 Va. at 598, 212 S.E.2d at 262-63. In *City of Fairfax* v. *Shanklin,* 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964), we said:

> "It must appear that there is an 'actual controversy' existing between the parties, based upon an, 'actual antagonistic assertion and denial of right', before the application can be entertained and an adjudication made. [Citations omitted.]
>
> "The controversy must be one that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment. [Citations omitted.]
>
> "The reason for these rules is that the courts are not constituted, and the declaratory judgment statute was not intended to vest them with authority, to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative. [Citations omitted.]"

The judgment of the lower court is reversed, and the proceeding is dismissed.

*Reversed and dismissed.*