Present:    All the Justices

LEA TURNER, ET AL.
                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 010580            March 1, 2002

BOARD OF COUNTY SUPERVISORS OF
PRINCE WILLIAM COUNTY, ET AL.

            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                        Richard B. Potter, Judge

      In this appeal, the primary issues we consider are

whether a zoning ordinance enacted by a board of county

supervisors constituted piecemeal downzoning and, if so,

whether the county and its board of supervisors rebutted the

property owners' evidence that the downzoning was not

justified by a change in circumstances substantially affecting

the public health, safety, or welfare.

                                I.

      The Board of County Supervisors of Prince William County

(the Board) enacted a zoning ordinance that became effective

on July 21, 1998.  This zoning ordinance changed the prior

zoning classification for several parcels of property in

Prince William County, including two parcels owned by Lea

Turner and one parcel owned by Anne Moncure Wall.  Wall and

Turner filed separate amended bills of complaint for

declaratory judgment and injunctive relief against the Board

and the County.  Wall and Turner asserted in their respective

bills, among other things, that the 1998 zoning ordinance

constituted unlawful piecemeal downzoning.  The Board and the County denied these assertions.

The circuit court consolidated the bills of complaint and at the conclusion of an ore tenus hearing, ruled, among other things, that the challenged zoning ordinance constituted piecemeal downzoning.  However, the court held that future traffic conditions constituted a change in circumstances substantially affecting the public health, safety, or welfare, which, in essence, permitted the County to enact the ordinance that reduced the zoning classification of the affected properties.  In determining whether there had been a change in circumstances, the court also considered the circumstances that have arisen since 1958, the date that the County enacted its first zoning ordinance.

The property owners appeal and the County assigns cross-error to certain rulings made by the circuit court and embodied in its final judgment.

## II.

In 1942, Anne Wall acquired two parcels of land in Prince William County, one parcel consisting of 24 acres, and the other parcel consisting of 30 acres.  Lea Turner and her late husband acquired a parcel of land in Prince William County around 1953 that consisted of 267 acres.

2

The parcels owned by Wall and Turner (collectively the property owners) are located in a neighborhood of approximately 1,200 acres in the Dumfries Magisterial District. Thirteen residential subdivisions have been developed in the neighborhood, and these subdivisions surround the property owners' land. The property owners' land, with few exceptions, constitutes the only land in the neighborhood that has not been developed.

In 1958, the Board enacted Prince William County's first zoning ordinance. The property owners' land enjoyed a zoning classification that permitted them to construct single-family dwellings on minimum lots of 10,000 square feet. In 1962, the Board amended its zoning ordinance. In 1982, and again in 1991, the Board repealed all prior zoning ordinances and enacted new ordinances. Each of these zoning ordinances permitted the landowners to subdivide their property into lots with a minimum size of 10,000 square feet.

In 1998, the Board enacted a new zoning ordinance that changed the zoning classification of only 492.4 acres out of the County's entire land mass of more than 220,000 acres. This zoning ordinance affected "less than [one] percent of the total acreage of the [C]ounty." The 1998 zoning ordinance limited residential development of the affected properties by imposing a minimum lot size of one acre. The property owners

3

own 65% of the land that was affected by this change in zoning classification.

The 1998 zoning ordinance substantially reduced the number of lots the property owners could develop on their parcels. The circuit court found that "[t]he feasibility studies indicate that the landowners could build some 419 lots [on their property under the 1991 zoning ordinance], but if they are downzoned . . . then [the property owners] can only build up to 199 lots."

The Board enacted its 1998 zoning ordinance because it was concerned about traffic and the effect that residential development would have upon the environment. Tom Fahrney, Chief of Transportation Planning for the County, testified that there are only three roads that provide access to the property owners' land and that vehicular traffic on these roads currently exceeds their "rated traffic capacity." He stated that these roads would have to be substantially improved if the property owners' land was developed as permitted by the 1991 zoning ordinance because these roads are inadequate and cannot satisfy the increase in future traffic. However, Fahrney conceded that these roads were either already in existence or under construction in 1991.

Several witnesses testified that since 1990 or 1991, streams and a pond in the neighborhood have been adversely

affected by logging operations that were conducted on Turner's property. Madan Mohan, a County engineer who has experience in the fields of hydrology, hydraulics, and water resources, qualified as an expert witness on the subject of stormwater management. He testified that as population increases in a subdivision, the environmental problems such as soil erosion increase, especially affecting the areas downstream. He also testified that this information was known to County employees before 1991.

## III.

### A.

The Board and the County assert in an assignment of cross-error that the circuit court erred in concluding that the 1998 zoning ordinance constituted piecemeal downzoning. Continuing, the County contends that the evidence does not support the circuit court's conclusion that the zoning change was piecemeal. The County also points out that the rezoning "was not to a density below that recommended by [the County's] comprehensive plan." The property owners respond, and we agree, that the circuit court did not err in concluding that the 1998 zoning ordinance constituted piecemeal downzoning.

We have stated several familiar principles that are pertinent to our resolution of this appeal. In a case

involving a comprehensive amendment to a comprehensive zoning ordinance, we stated:

> "The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained."

Board of Supervisors v. Carper, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959).[*]

In Fairfax County v. Snell Corp., 214 Va. 655, 658, 202 S.E.2d 889, 893 (1974), we enumerated certain factors that we consider when determining whether the adoption of a zoning ordinance constitutes piecemeal downzoning. We stated that generally, a piecemeal zoning ordinance is "one initiated by the zoning authority on its own motion; one selectively addressed to landowners' single parcel and an adjacent parcel;

---

[*] In Board of Supervisors v. Carper, a county amended its zoning ordinance. We held that the amendment, which reduced the number of residential lots that could be created on parcels owned by property owners, was "unreasonable and arbitrary and that it [bore] no relation to the health, safety, morals or general welfare of the owners or residents of the area so zoned." 200 Va. at 662, 107 S.E.2d at 396-97. The litigants in Carper did not request that this Court adjudicate the issues in that appeal using principles that are applied in a downzoning case.

6

and one that reduces the permissible residential density below that recommended by a duly-adopted [m]aster [p]lan." Id. Even though these factors are not exhaustive, and other factors may be considered when determining whether a zoning ordinance is piecemeal, we need not look beyond these factors in our resolution of this appeal.

Applying the principles we enunciated in Snell, we hold that the circuit court correctly determined that the County's 1998 zoning ordinance constituted piecemeal downzoning. The 1998 zoning ordinance was initiated by the Board; the ordinance targeted certain property; and the ordinance reduced the potential residential density of the property owners' land below that recommended by the County's duly-adopted master plan. As the circuit court properly stated:

> "This downzoning is not comprehensive, and there is absolutely no evidence that it was ever intended to be comprehensive. It does not include a review of the entire [C]ounty. It does not include a review of any known division of the [C]ounty, such as a magisterial district. It does not include a review by the board of any known region or zone or designated area of the [C]ounty.
> "It involves simply a review of a very small piece of land area of the [C]ounty. . . .
> "For the [County] to argue that the downzoning is anything but piecemeal ignores the reality."

The circuit court also found, as a matter of fact, that "the purpose of the [B]oard [of County Supervisors] was to target the [property owners'] property to reduce the density

7

of the only remaining undeveloped property in the area of the downzoning." Indeed, the County's own witness, Susan Roltsch, an employee in the County's Department of Economic Development, testified that the County's planning office recommended that the County downzone the property owners' land after another property owner submitted a subdivision plan for a parcel in the neighborhood where the property owners' land is located. And we note that Roltsch, who also qualified as an expert witness on the subjects of zoning and planning, acknowledged that the 1998 zoning ordinance did not affect properties in other parts of the County.

Moreover, the area affected by the County's 1998 zoning ordinance affected only .22% of the land in the County. The County downzoned slightly more than 492 acres of the County's entire land mass of more than 220,000 acres. Sixty-five percent of the land adversely affected by the 1998 zoning ordinance belonged to the property owners.

We recognize that the County argued in the circuit court and argues here that its 1998 zoning ordinance, which requires a minimum lot size of one acre on the property owners' land, is consistent with the County's comprehensive plan land use designation that permits one to four single family residential units per acre in areas designated "Suburban Residential Low." However, we agree with the circuit court's determination that

the 1998 zoning ordinance had the practical effect of prohibiting the property owners from developing their land consistent with the density rate contained in the comprehensive plan. As the circuit court explained, due to the County's longstanding land use regulations, the minimum size of a residential lot that the property owners could create on their property under the 1998 zoning ordinance would exceed one acre.

We also note that the property owners' expert witnesses testified that under the 1998 zoning ordinance, the property owners' land could not be developed to achieve a density of one lot per acre. Additionally, Thomas Eitler, the County's expert witness, conceded that the property owners' land "probably" could not be developed at a density of one lot per acre.

B.

In Snell, we considered for the first time "the standard to be applied in judicial review of the validity of a zoning ordinance, enacted on motion of the zoning authority, which effects a piecemeal reduction of permissible residential density (downzoning)." 214 Va. at 656, 202 S.E.2d at 891. We articulated the following test in Snell that is equally pertinent here:

9

> "With respect to the validity of a piecemeal downzoning ordinance such as that here involved, we are of opinion that when an aggrieved landowner makes a prima facie showing that since enactment of the prior ordinance there has been no change in circumstances substantially affecting the public health, safety, or welfare, the burden of going forward with evidence of such mistake, fraud, or changed circumstances shifts to the governing body. If the governing body produces evidence sufficient to make reasonableness fairly debatable, the ordinance must be sustained. If not, the ordinance is unreasonable and void."

214 Va. at 659, 202 S.E.2d at 893 (footnote omitted) (emphasis added). We applied this test in Virginia Beach v. Virginia Land Investment Association, 239 Va. 412, 416, 389 S.E.2d 312, 314 (1990), and in Seabrooke Partners v. City of Chesapeake, 240 Va. 102, 105-06, 393 S.E.2d 191, 193 (1990). This test

> "promotes the policy and purposes of the zoning statutes. While the landowner is always faced with the possibility of comprehensive rezoning, the rule we have stated assures him that, barring mistake or fraud in the prior zoning ordinance, his legitimate profit prospects will not be reduced by a piecemeal zoning ordinance reducing permissible use of his land until circumstances substantially affecting the public interest have changed. Such stability and predictability in the law serve the interest of both the landowner and the public."

214 Va. at 659, 202 S.E.2d at 893.

The circuit court held that the County's 1958 zoning ordinance was the zoning ordinance that must be deemed the "prior ordinance" when determining whether the property owners established a prima facie showing that between the enactment of the prior ordinance and the 1998 ordinance there has been

10

no change in circumstances substantially affecting the public health, safety, or welfare. The circuit court also used the 1958 zoning ordinance as the "prior ordinance" in ascertaining whether the County met its burden of going forward with the evidence that there had been a change in circumstances substantially affecting the public health, safety, or welfare.

The property owners contend that the circuit court should have used the County's 1991 zoning ordinance to determine whether the requisite change in circumstances had occurred and whether the County had met its evidentiary burden. The County responds that the circuit court did not err in considering the 1958 zoning ordinance as the "prior ordinance" in the application of the Snell test. The County argues that the 1958 ordinance is the prior ordinance because, consistent with this Court's precedent, the 1958 ordinance "was characterized by specific legislative deliberation about the zoning that was subsequently changed by the downzoning."

We disagree with the County. In each of our prior cases involving ordinances which downzoned properties, Snell, Henrico County v. Fralin & Waldron, Inc., 222 Va. 218, 278 S.E.2d 859 (1981), Virginia Land Investment Association, and Seabrooke Partners, we did not have to consider which zoning ordinance constituted the "prior zoning ordinance" within the meaning of the test that we established in Snell. In this

11

case, we hold that the circuit court erred when it used the 1958 zoning ordinance as the "prior zoning ordinance" in the application of the test we established in Snell.

The County's 1982 zoning ordinance contained the following language that expressly repealed the 1958 zoning ordinance:

> "The Zoning Ordinance of Prince William County as originally enacted September 1, 1958, and subsequently amended heretofore, is hereby repealed except those provisions expressly retained herein."

The County's 1991 zoning ordinance contained the following language that expressly repealed the 1982 zoning ordinance:

> "The Zoning Ordinance of Prince William County, as herein presented, is hereby adopted on October 22, 1991 and becomes effective at 5:00 p.m. on November 21, 1991.  The Zoning Ordinance of Prince William County as enacted May 4, 1982, and subsequently amended heretofore, is simultaneously repealed, except those provisions expressly retained herein, upon this chapter taking effect."

We hold that the appropriate ordinance that we must consider in our application of the Snell test is the 1991 zoning ordinance because that was the last ordinance adopted by the Board before it enacted the 1998 ordinance that changed the zoning classification of the property owners' land.

C.

The property owners contend that once they established a prima facie showing that since the enactment of the prior ordinance, the 1991 zoning ordinance, there had been no change

12

in circumstances substantially affecting the public health, safety, or welfare, the burden of going forward with evidence of a substantial change in circumstances shifted to the County.  The property owners argue that the County failed to show a change in circumstances between the enactment of the 1991 zoning ordinance and the enactment of the 1998 zoning ordinance.  Continuing, the property owners assert that because the County failed to present such evidence, the reasonableness of the 1998 zoning ordinance was not fairly debatable and, therefore, the circuit court should have invalidated that zoning ordinance.

Responding, the County contends that it presented testimony about the impact that increased residential development would have upon the traffic in the neighborhood where the property owners' land is situated and that changed traffic conditions constituted a substantial change in circumstances affecting the public health, safety, or welfare. Thus, the County contends that it produced evidence to make reasonableness of the 1998 zoning ordinance fairly debatable, and the circuit court properly sustained the zoning ordinance. We disagree with the County.

We hold that as a matter of law the County failed to present sufficient evidence to support a finding of a change in circumstances regarding the impact of increased traffic

13

between the time the Board enacted its zoning ordinance in 1991 and the time it enacted the 1998 zoning ordinance.

The circuit court ruled that if it

"had to decide if the changes in traffic or road conditions were substantial based upon the evidence presented by the [County] as to the quantitative changes and conditions in the past, whether it was from 1958 or [19]82 or [19]91, there is simply no evidence.
"Perhaps that's because it was not until the 1980s that [the Virginia Department of Transportation] and the [C]ounty started measuring actual traffic counts, so the historical data may be limited.  But for whatever reason, there's just no evidence presented as to the traffic count in 1958 up to 1991, up to 1996, 1997, or any other previous time, except at the time of downzoning in 1998 . . . ."

The County's own witnesses gave testimony that indicated there was no change in circumstances regarding the impact of increased traffic upon the County between 1991 and 1998.  The County's chief of transportation planning, Fahrney, testified that there were no historical traffic development studies for the neighborhood where the property owners' land is located. He also testified that the County's current measure of traffic, ten vehicle trips per day per single-family dwelling, has been in effect since 1985, a figure that the County admitted it used in its Design and Construction Standards Manual in both 1991 and 1998 for street design and construction.  Fahrney stated that the streets that serve the neighborhood where the property owners' land is located had

14

already been constructed in 1991 or were under construction in 1991.

Roltsch testified that between 1991 and 1998, there were no changes in the method of ingress and egress to the property owners' land. She also indicated that the County was aware in 1991 of the minimum and maximum number of residential units that could be constructed in the neighborhood where the property owners' land is located. The County also used the same standards in 1991 and 1998 to calculate the rate of vehicular traffic in this neighborhood. Thus, the County had the ability to calculate any necessary traffic generation rates in both 1991 and 1998.

Because the County failed to meet its burden of going forward with evidence of a change in circumstances regarding traffic between 1991 and 1998, the reasonableness of the County's 1998 zoning ordinance that downzoned the property owners' land is not fairly debatable. Thus, the 1998 zoning ordinance cannot be sustained.

We recognize that the circuit court found that some roads in the neighborhood where the property owners' land is located are used in excess of their "rated traffic capacity," and if the property owners develop their property as permitted by the 1991 zoning ordinance, the County would have to make extensive improvements to existing roads. These improvements

15

"could involve even condemnation of existing residential properties to expand the right of ways."  The circuit court ruled that "[w]hile this evidence deals only with the potential impact of future development on the traffic conditions existing in 1998 at the time of the downzoning . . . this is, in fact, a valid consideration for this [c]ourt."

We hold, however, that the circuit court erred by relying upon the future impact of future residential development on traffic conditions because that is not a permissible factor that a court may consider in a piecemeal downzoning case. Rather, as we have already stated, once an aggrieved landowner establishes a prima facie case under the Snell test, the proper inquiry for a court is whether the County presented evidence that between the enactment of the prior zoning ordinance and the time of the downzoning, there has been a change in circumstances substantially affecting the public health, safety, or welfare.  The County is not permitted to satisfy this evidentiary burden by relying upon the potential impact of future residential development on traffic conditions.

D.

The circuit court ruled that the property owners had made a prima facie showing that there had been no change in

16

circumstances relating to the environment substantially affecting the public health, safety, or welfare between the enactment of the 1958 ordinance and the enactment of the 1998 ordinance. The County asserts, however, in an assignment of cross-error, that it presented sufficient evidence to support a conclusion that a change of circumstances had occurred relating to environmental concerns and, thus, the reasonableness of its 1998 zoning ordinance was fairly debatable and, thus, must be sustained. We disagree with the County.

The circuit court considered testimony from expert witnesses presented by the County that the development of the property as permitted by the 1991 zoning ordinance would result in increased runoff of water with the potential environmental impact on surrounding properties of erosion and silting of streams and watersheds. The court also considered evidence that logging operations on Turner's property, a less intrusive use than grading and developing the property for residential subdivisions, had caused siltation and erosion on adjoining properties. And, the court also considered the impact that the Chesapeake Bay Preservation Act, Code §§ 10.1-2100, et seq., and the related adoption of Best Management Practices mandatory requirements in 1989 had upon the County. However, the circuit court concluded

> "the [c]ourt finds that really nothing has changed
> in terms of the environment itself. It does not
> represent a change, and more importantly, it does
> not represent a change that can be considered
> substantial.
>     "The fact is, the [C]ounty has offered no
> measurements of any changes from 1958 to 1998 that
> show quantitative changes in the environment."

The court also held that while the County has "proven the general principle that residential development means erosion and runoff, and secondly, that the more dense the development the more the runoff, [the County has] failed to produce any quantitative evidence that the development of the property will . . . compound the problem."

We have reviewed the evidence of record, and we conclude that the County failed to establish a change in circumstances substantially affecting the public health, safety, or welfare regarding environmental concerns between 1991 and 1998. The record is simply devoid of evidence sufficient to satisfy the necessary legal standard in this appeal. Even though the County produced evidence from property owners who lived in the neighborhood that the amount of silt had increased in surrounding streams and erosion had occurred, as the circuit court properly concluded, the County failed to establish that these changes substantially affected the public health, safety, or welfare.

IV.

18

In conclusion, we hold that the circuit court correctly held that the County's 1998 ordinance constitutes piecemeal downzoning, and we will affirm that portion of the court's judgment. We hold, however, that the circuit court erred in its conclusion that it was required to use the County's 1958 zoning ordinance as the "prior ordinance" when the court applied the Snell test. The ordinance that the court should have considered was the County's 1991 zoning ordinance.

We further hold that when the correct ordinance is considered, the property owners made a prima facie showing that between the enactment of the 1991 zoning ordinance and the enactment of the 1998 zoning ordinance, there had been no change in circumstances substantially affecting the public health, safety, or welfare. The County failed to satisfy its burden of demonstrating that there was a change in circumstances substantially affecting the public health, safety, or welfare between 1991 and 1998. Hence, on this record, the County failed to produce sufficient evidence to make the reasonableness of the 1998 zoning ordinance fairly debatable. Therefore, we will enter a declaration that the County's 1998 zoning ordinance is void, and the property owners are entitled to develop their property as permitted by the County's 1991 zoning ordinance.

Affirmed in part,

19

<u>reversed in part</u>, <u>and final judgment</u>.