## CIRCUIT COURT OF RAPPAHANNOCK COUNTY

Sidney E. Worley, Jr.,
and Mary Catherine Worley

v.

Town of Washington

April 16, 2004

Case No. (Law) CL03-26

BY JUDGE JEFFREY W. PARKER

This matter comes before the Court for a decision on a Motion and Cross-Motion for Summary Judgment filed by the parties as to Count II of the Motion for Judgment.

This matter originated with the filing of an eight-count pleading by the Plaintiffs as the result of a decision by the Town Council of the Town of Washington on March 13, 2003, denying the Plaintiffs' application for a Certificate of Appropriateness in conformity with Section VI of the Town's Historic District Ordinance. Such a Certificate is a condition precedent to filing for a building permit.

The Plaintiffs had initially filed their application for the said Certificate with the Town Architectural Review Board (ARB). On March 13, 2003, the ARB denied the Plaintiffs' application and the Plaintiffs timely appealed to the Town Council.

Subsequent to the Town Council's decision denying their Petition, the Plaintiffs appealed and, in Count II of their pleading, filed an action for Declaratory Judgment seeking the Court to declare the entire Historic District Ordinance of the Town invalid, unenforceable, and void in its entirely.

The Town timely filed an Answer and subsequently Motions for Summary Judgment were filed as to Count II leaving the balance of the Counts for determination at a later date pending the outcome of the subject motions.

Both sides filed Briefs and Counter Briefs and designated twenty-two exhibits for consideration by the Court in this Motion together with certain stipulated facts. Further, the Court has before it the official record of the proceedings before the Architecture Review Board and the Town Council.

> A grant of summary judgment must be based upon undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admissions. Additionally, the trial court must consider inferences from the facts in the light most favorable to the non-moving party unless the inferences are strained or forced contrary to reason.

*Andrews v. Ring*, 266 Va. 311, 318 (2003).

Due to the restrictive nature of summary judgment proceedings, frequently, trial courts are unable to reach a decision fully disposing of the case. For the reasons set forth in this opinion, the Court believes that it has sufficient information to narrow the issues before the Court but that further evidence will be required to reach a final decision in this matter.

Issue I: Whether the 1975 designation by the Virginia Landmarks Commission of the Town of Washington Historic District was *ultra vires* or otherwise unlawful, and, if so, the legal significance, if any, thereof, and whether the consideration of the commission's designation is time barred by any rule or statute.

The mere designation of the Town as an Historic District by the Virginia Landmarks Commission was within the discretion of the Commission.

"The primary responsibility of the [Historic Landmarks Commission] was to make a survey of, identify, designate, and establish historical landmarks, buildings, structures, and sites and to then aid, advise, and encourage in the preservation."

The actions that the Town takes in reference to this designation is the significant issue for the Court. The Court is not concerned or aware of any statute of limitations or any other time-bar, which would be applicable to this designation.

Issue II: Whether as a matter of law the Town of Washington's Historic District Ordinance was adopted in accordance with the applicable provisions of Title 15.1, Chapter 11, Article 8, of the Code of Virginia, as amended (currently Title 15.2, Chapter 22, Article 7).

As the parties have stipulated, the law in effect at the time of the enactment of the Historic District Ordinance (" the Ordinance" ), to wit Section 15.1-503.2, is the Statute (" the Statute" ) that governs the validity of the Ordinance at this time. This provision authorized municipalities to adopt an ordinance permitting an architectural review board to govern the approval of new construction provided such construction was "architecturally compatible with the historic landmarks, buildings, or structures therein."

Initially, it is undisputed that the Dillion Rule governs the validity of municipal ordinances including the one before the Court. The Rule states that "municipal corporations have only those powers expressly granted [from the General Assembly], those necessarily or fairly implied therefrom, and those that are essential and indispensable." *Board of Supervisors v. Countryside Invest Co.*, 258 Va. 497, 503 (1999). In reference to an Historic District Ordinance, this Court concludes that the Dillion Rule requires that the power of the Town to act in reference to this Ordinance "must be exercised pursuant to an express grant." *Id.*

As a condition precedent for the granting of an ARB such authority, a governing body was required to make certain determinations consistent with the enabling authority set forth in the law.

This Court will break down these determinations as they apply to subparts of the Statute in determining the Town's failure or success in complying with the requirements of the law.

A. *Virginia Landmarks Commission*

The first portion of the said Enabling Statute in pertinent part says as follows: "the governing body of any ... municipality may adopt an ordinance setting forth the *historic landmarks* within the municipality ... *as established* by the Virginia Landmarks Commission. . . ." Section 15.1-503.2., Code of Virginia (now repealed) (emphasis added).

The Defendant argues that the Virginia Historic Landmarks Commission in a meeting held on April 15, 1975, approved the designation of the entire Town of Washington as an "historic district" and that this action was sufficient for the Town to adopt its Ordinance in reliance upon the actions of this Commission.

In the joint Exhibits submitted to the Court, the parties included the minutes of the Virginia Historic Landmarks Commission, which adopted for approval a report entitled "Washington Historic District" submitted by Junius R. Fishburne, Jr., the Executive Director of the Commission. In reviewing the report, the Court notes that the Washington Historic District report was one of eight completed reports (Appendix III) approved on April 15, 1975, and the only report at that time describing a "district" as opposed to a specific structure. Without comment,

the Commission adopted the recommendation of the "Register Committee" which submitted the eight reports for approval.

The Historic District Ordinance is presumed to be valid, and, to invalidate the Ordinance, the Plaintiffs have the burden of proof. See *Turner v. Board of Supervisors of Prince William County*, 263 Va. 283 (2002). However, the actions of the Virginia Historic Landmarks Commission are not legislative enactments. *Virginia Historic Landmarks Commission v. Board of Supervisors of Louisa Co.*, 217 Va. 468, 472-73 (1976).

The first portion of the enabling law only refers to historic landmarks, not districts. The Commission in its report did *not* designate any specific landmarks; it only designated a district.

It is clear that the definition of "landmark" as used in this statute is critical for the determination by the Court of the appropriateness of the actions of the Town. *Black's Law Dictionary* defines a landmark as no more than a "monument or erection set up on a boundary line." In contrast, the Commission in the *Louisa County* case, designated a district containing 14,000 acres as a "landmark" and the Supreme Court indicated that perhaps such "choice of language ... was ill advised and the area should have been identified as an historic district on the ground that it is an area which contains registered landmarks." *Id.* at 474. However, unlike the *Louisa County* case, where the actions of the Historic Commission had no legal effect, *id.*, the "ill advised language" used here, when adopted verbatim, directly affects individual's real property rights.

While the enabling legislation of the Commission is quite broad in scope (see Joint Exhibit K), it is clear that the Supreme Court in the *Louisa County* case saw the Commission's power as limited, because they were not authorized to "make rules or adjudicate contested cases." 217 Va. at 475.

The thrust of the *Louisa County* case is that a mere designation of an area as a "landmark" by the Commission does not have the force of law. Therefore, the Town cannot simply rely upon this designation by the Commission to pass an ordinance limiting property rights. The Town had a duty to determine what the Commission actually did before it relied upon the actions of the Commission.

The Statute establishing the Commission defined an historic district as "a geographically designated area, which contains a significant concentration of historic buildings, structures, or sites, sharing a common historical, architectural, or cultural heritage." 217 Va. at 473. There is nothing in the report to the Commission or the Commission's minutes to indicate that the Town comes within this definition.

This Court can only consider the facts stipulated before it. In reference to whether the Town meets the definition set forth above, the only stipulated fact dealing with this issue is that the Town "does *not* contain any individual

buildings or structures designated as historical landmarks." (Joint Stipulation 6.5 (emphasis added).) If the Town does not contain any such structures, then the District identified by the Commission was inappropriately designated as a landmark.

The Town cannot abrogate its duty to carefully define an historic district by relying upon an "ill-advised" choice of language by a Commission. Again, in reviewing the *Louisa County* case, for guidance:

> There is no compulsion upon the Board of Supervisors of Louisa to enact any regulation respecting the identified [District]. Neither is there any compulsion upon the Board to give the resolution any weight in its consideration of zoning, rezoning, or other matters affecting the land in the District.

217 Va. at 474.

The Court concludes that the Virginia Historic Landmarks Commission designation of the Town as an historic district is not the equivalent of designating the Town as an historic landmark as required under Va. Code § 15.1-503.2. Therefore, the Court holds that this provision of the Enabling Law is insufficient as justification for enactment of the Ordinance.

## B. *Structures of Important Interest*

Secondly, the Court must further determine if the remaining portions of the enabling law are sufficient for the creation of an historic district ordinance. Section 15.1-503.2 permits the governing body to adopt an historic district ordinance setting forth historic landmarks if "buildings or structures within [the Town] have an important historic, architectural, or cultural interest. . . ."

No such buildings or structures are identified in the Town's Ordinance. None of the stipulated documents, including the Ordinance, contain any designation or recognition *by the Town* of any individual building falling within the classifications previously identified. No historic landmark is set forth in the Ordinance for the reason more fully contained in Paragraph A; the Court cannot call a "landmark" a "district." The Ordinance when adopted did not identify historic buildings or landmarks, and, as a result, the Ordinance does not come within that particular provision of the enabling law.

The Court holds that this provision of the Enabling Law is insufficient as justification for enactment of the Ordinance.

### C. *Any Historic Areas as Defined by Va. Code § 15.1-430*

Thirdly, an Historic District Ordinance may be properly adopted if the governing body determines "that the subject area contains historic areas within the municipality as defined by § 15.1-430(b) of the Virginia Code ... ." (Va. Code § 15.1-503.2 (emphasis added).)

Section 15.1-430 of the Code as it existed at that time defines historic area as "an area containing one or more buildings or places in which historic events occurred or have special public value because of notable architectural, archeological, or other features relating to the cultural or artistic heritage of the community of such significance as to warrant conservation and preservation."

As discussed above, the Ordinance does not identify any building or place meeting this definition. (Joint Exhibit Q.) The application of the Commission is insufficient for the Court to make this determination as to the entire Town. In the event there is evidence on this issue, it would need to be presented to see if the area, i.e. district, in question came within this definition at the time the Ordinance was adopted. The Court would need to receive evidence that the entire area is an historic area warranting conservation and preservation because of its notable features. As the Court views the presently stipulated facts and documents insufficient in this matter, the Court will allow the parties to present further evidence on these issues, if they are so advised.

### D. *Arterial Streets*

The governing body of the municipality may adopt the ordinance if "historic districts adjacent to [any previously identified] landmarks or buildings ... or arterial streets ... [are found] to be significant routes of tourist's access. ... ." (Va. Code § 15.1-503.2.) Needless to say, as there was no designation of any specific landmarks, there could not be any designation of any such historic district adjacent to these non-existent landmarks. This issue requires no further evidence, and this portion of the Statute is inadequate to sustain the Ordinance.

### E. *Stand Alone Ordinance*

The Plaintiffs argue that the Enabling Statute requires by its terms an existing zoning ordinance to be in place and that an historic district ordinance may exist only as an amendment to the zoning ordinance.

In the case at bar, the Town adopted the Historic District Ordinance as a stand alone ordinance and not as an amendment, and, in fact, adopted the Ordinance before the enactment of the current zoning ordinance.

Although not clear from the stipulated evidence, it appears that there may have been a zoning ordinance in effect at the time of the enactment of the Historic District Ordinance but that this Historic District Ordinance was never incorporated in any part of the zoning ordinance.

This issue does not appear to the Court to be one of substance, but of procedure only. The Court holds that as the Historic District Ordinance has been enacted with all the statutory requisites, but simply not included in the Zoning Ordinance, it would not for that reason alone invalidate the statute.

Finally, the Plaintiffs note that the Zoning map does not reference this Historic District as an overlay district.

The Court would point out that the subject ordinance 15.1-493 makes the zoning map mandatory only if the Planning Commission is directed to prepare a map by the Town Council. There was nothing submitted that would indicate that the Council ever directed the preparation of a map containing this particular overlay district. The Town argues that, as the entire Town was in the Historic District, the preparation of a map for this purpose would be superfluous.

The Court does not believe that the failure of the Town to show the district in the map is fatal to the validity of the Ordinance. While this inaction shows a less than careful approach to compliance with the Virginia Code, such inaction does not affect a substantive right nor mandate direction justifying invalidating a Town Ordinance.

Issue III: Whether as a matter of law the Town of Washington's Historic District Ordinance is invalid and unenforceable for failure to specifically designate any individual historic landmarks or other historic buildings or structures within the historic district.

The Court has already addressed the substance of this issue in the answers to Issue II.

Issue IV: Whether as a matter of law the standards and review criteria set forth in Section 5 of the Town of Washington's Historic District Ordinance are in accord with or contrary to the provisions of Title 15.1, Chapter 11, Article 8, of the Code of Virginia, as amended, (currently Title 15.2, Chapter 22, Article 7) or otherwise impermissibly vague, ambiguous, or overbroad on their face.

The Plaintiffs take the position that the broad language of the Ordinance resulted in the arbitrary actions taken by the Board because of the lack of standards contained therein. The Defendant takes the position that it is impossible to set down specific rules as to architectural standards because they inevitably vary and the local decision maker needs to have flexibility in applying the existing styles of architecture to the new buildings to be constructed. The Town relies upon the case of *Gorieb v. Fox*, 145 Va. 554 (1926), and *Helmick v. Town of Warrenton*, 254 Va. 225 (1997).

The Plaintiffs further take the position that the restrictions as set forth in the Ordinance are unreasonable and bear no substantial relationship to the public "health, safety, or welfare" (Va. Code § 15.1-489, subsequently repealed but in force at the time of the adoption of the Ordinance), and that the stipulated facts overcome a presumption of the legislative validity and the Defendant has insufficient evidence of reasonableness to make the question fairly debatable. See *Board of Supervisors of James City County v. Rowe*, 216 Va. 128 (1975).

A critical portion of the Ordinance is contained in Section 5.1, General Guidelines. In the Guidelines, there are eight subsections or general principles designed to assist the ARB in the application of the Ordinance. The Court observes that, had the Town defined the specific landmarks, buildings, or other structures in the Guidelines that would come within the Enabling Ordinance, that perhaps vagueness would not be an issue.

Reading the Guidelines, one gets the impression that there are all types and styles of architecture in the community and, therefore, the intent is for each area within the Town to maintain some consistency.

The essence of the problem is not the wording of the statute, vague though it may be, but in its application. If, in fact, areas of the Town are not truly worthy of historic preservation as defined by the Enabling Statute, then the Ordinance is void for that reason alone. The Court in its answer to Issue II has identified one area requiring the submission of further evidence. Should it be determined that the areas to be protected do not come within the statutory definitions, then it does not become necessary to wrestle with the "architectural vernacular" in this case.

Issue V: Whether as a matter of law the standards and review criteria set forth in Section Five of the Town of Washington Historic District Ordinance to the extent they permit considerations of materials, are in accord with or contrary to the provisions of Va. Code § 36-98 and the provision of Title 15.1, Chapter 11, Article 8, of the Code of Virginia as amended (currently Title 15.2, Chapter 22, Article 7) and whether the ARB and town council's consideration of proposal materials as a factor was *per se* contrary to law.

From the stipulations submitted to the Court, it appears that building materials were a consideration, but not the only consideration, by the Town in reaching their decision. The Enabling Statute provides that "such ordinance may include a provision that no building or structure ... shall be erected ... unless the same is approved ... as being *architecturally compatible* with the historical landmarks, buildings, or structures therein ." Section 15.2-503.2(A)(1) (emphasis added). The Ordinance contains the identical requirement that any new buildings be architecturally compatible with the historical landmarks, buildings, or structures. Section 4.1, *Historic District Ordinance*, Town of Washington.

This Court received neither evidence from an architect nor any other expert as to what the term "architecturally compatible" means. Neither the statute nor the Ordinance defines architectural terms, but Section 5.2 of the Ordinance gives the ARB approval rights over materials. However, whether materials can create architectural "incompatibility" is an issue upon which this Court has received no evidence.

In order to reach a decision that a variance in materials can make a structure architecturally incompatible with existing structures, the Court as a non-expert will need to hear from an expert in the field of architecture as to what is architecturally compatible and what is not in that field.

If, for example, an architect to the satisfaction of the Court were to testify that materials make a structure architecturally incompatible although similar in appearance, then the Court might consider the issue of materials as a relevant factor.

If materials in and of themselves are never a relevant factor in determining architectural compatibility, inclusion could make the Ordinance *ultra vires* on this issue.

The Court would note that the Plaintiff cited an opinion letter of the Attorney General dated June 17, 1996, in which the Attorney General at that time indicated that an Architectural Review Board could consider issues of design, but not materials. The Defendant pointed out that the General Assembly subsequently amended Va. Code § 36-98 to allow local ordinances to state that the building code does not supercede ordinances enacted pursuant to § 15.2-3306.

The Plaintiff responded that this amendment took place after the enactment of the ordinance and, therefore, was inapplicable. Further, the Ordinance was amended pursuant to § 15.1-503.2, not § 15.2-2306.

It is the Court's view that, as the Attorney General was simply expressing an opinion which was subsequently overruled by the General Assembly, his opinion is not binding on this Court nor is it determinative of what was intended by the statute at the time the subject ordinance was enacted. Therefore, the Court again believes that evidence would need to be taken in order for this Court to reach a decision on this issue, and, therefore, the Court declines to make such a determination on Summary Judgment.